# United States Court of Appeals
## For the First Circuit

No. 16-2039

GEORGE H. BENNETT,

Petitioner, Appellee,

v.

UNITED STATES OF AMERICA,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Barron, Circuit Judge,
Souter, Associate Justice,*
and Selya, Circuit Judge.

Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellant.
James S. Nixon, Assistant Federal Defender, with whom Federal Defender Office -- Bangor Branch was on brief, for appellee.

July 5, 2017

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BARRON**, **Circuit Judge**.    This appeal concerns George Bennett's challenge to his thirty-year prison term for a number of federal crimes.  Bennett's sentence depended, in significant part, on the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).  That law imposes a mandatory minimum prison sentence of fifteen years on a defendant who has been convicted of violating 18 U.S.C. § 922(g), a statute that prohibits certain persons from possessing or transporting firearms, if that defendant has at least three prior convictions for an offense that falls within ACCA's definition of a "violent felony."  18 U.S.C. § 924(e).

Bennett was convicted of, among other things, violating § 922(g), and the sentencing judge determined that at least three of Bennett's prior convictions under Maine law were for an offense that qualifies as a "violent felony" under ACCA.  The sentencing judge therefore applied ACCA's mandatory minimum fifteen-year sentence to Bennett's § 922(g) conviction.  The sentencing judge then imposed a sentence of twenty-five years of imprisonment for the § 922(g) conviction, even though, if Bennett were not subject to ACCA, the maximum prison sentence permitted for that conviction would have been only ten years.  Combined with the punishment that the sentencing judge imposed for Bennett's other federal convictions, the twenty-five-year prison sentence for that conviction resulted in an overall prison sentence for Bennett of thirty years.

In this federal habeas petition, Bennett now contends that his sentence must be set aside because of its dependence on ACCA's application. Specifically, Bennett argues that he does not have three prior convictions for an offense that qualifies as a "violent felony" within the meaning of ACCA. Bennett contends, among other things, that Maine law permitted the state to convict him of two of the supposedly ACCA-qualifying crimes (which were for the crime of aggravated assault) by showing that he had a mens rea of mere recklessness. He thus contends that those convictions cannot qualify as ones for an offense that is a "violent felony." The District Court agreed with Bennett, granted Bennett's habeas petition, and ordered that he be re-sentenced without subjecting him to ACCA's mandatory fifteen-year minimum prison sentence. The government then filed this timely appeal.

We conclude that the text and purpose of ACCA leave us with a "grievous ambiguity," United States v. Godin, 534 F.3d 51, 60-61 (1st Cir. 2008) (quoting United States v. Councilman, 418 F.3d 67, 83 (1st Cir. 2005) (en banc)), as to whether ACCA's definition of a "violent felony" encompasses aggravated assault in Maine, insofar as that offense may be committed with a mens rea of mere recklessness, as opposed to purpose or knowledge. We therefore conclude that we must apply the rule of lenity to determine whether that offense qualifies as a "violent felony" under ACCA. And, in consequence, we conclude

that Bennett's two prior Maine convictions for aggravated assault do not so qualify and thus that the District Court's order granting Bennett habeas relief must be affirmed.

**I.**

We start by recounting the case's rather involved procedural history. In the course of doing so, we provide greater detail about the relevant statutory provisions -- both state and federal.

**A.**

On April 5, 1994, Bennett and several co-defendants were indicted on a number of federal charges in United States District Court for the District of Maine. After a jury trial, Bennett was convicted of: (1) conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846; (2) use or carrying of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

At sentencing, Bennett received the following punishment: five years of imprisonment for his conviction under §§ 841 and 846; five years of imprisonment for his conviction under § 924(c); and twenty-five years of imprisonment for his conviction under § 922(g)(1). The twenty-five-year prison sentence for Bennett's conviction under § 922(g)(1) was ordered to run

concurrently to his five-year prison sentence for his conviction under §§ 841 and 846, and consecutively to his five-year prison sentence for his conviction under § 924(c). Thus, the overall term of imprisonment that Bennett received was thirty years.

With respect to Bennett's sentence for his conviction under § 922(g)(1), the Probation Office prepared a pre-sentence investigation report (PSR) that concluded that Bennett was subject to ACCA, due to his having at least three prior convictions for an offense that qualifies as a "violent felony." The PSR set forth a recommended sentencing range of 262 to 327 months of imprisonment, based on the United States Sentencing Guidelines. The actual prison sentence that was imposed on Bennett for that conviction -- twenty-five years, or 300 months -- fell within the recommended range. The sentence for that conviction thus exceeded both the ten-year maximum prison sentence to which Bennett would have been subject absent ACCA's application and the fifteen-year mandatory minimum prison sentence that ACCA itself required to be imposed.

**B.**

ACCA provides that a "person who violates [18 U.S.C. § 922(g)] and has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be fined under this title and imprisoned not less than fifteen years." 18 U.S.C.

- 5 -

§ 924(e)(1) (emphasis added). ACCA defines a "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that -- (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Subsection (i) of ACCA's definition of a "violent felony" is commonly referred to as the "force" clause. The "otherwise" clause of subsection (ii) of that definition, which follows that subsection's listing of certain offenses ("burglary," "arson," "extortion," or crimes that "involve[] use of explosives"), is commonly referred to as the "residual" clause.

In applying ACCA's mandatory penalty enhancement to Bennett's § 922(g)(1) conviction, the sentencing judge relied on information set forth in the PSR. The PSR had identified Bennett's ACCA-qualifying prior convictions for a "violent felony" as: 1) a 1978 conviction for Maine aggravated assault, 2) a 1979 conviction for Maine aggravated assault and criminal threatening with a dangerous weapon, and 3) a 1986 conviction for Maine aggravated assault.

The sentencing judge did not specify whether those Maine state law convictions -- which plainly were not for any of the enumerated offenses listed in subsection (ii) of

- 6 -

§ 924(e)(2)(B) -- were for an offense that fell within the force clause or the residual clause of ACCA's definition of a "violent felony."  Neither did the PSR.

At the time of Bennett's conviction under § 922(g)(1), Maine defined aggravated assault as, in relevant part, "intentionally, knowingly or recklessly caus[ing]: A. Serious bodily injury to another; or B. Bodily injury to another with use of a dangerous weapon; or C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life."  Me. Rev. Stat. Ann. tit. 17-A, § 208 (1981).  See State v. Davis, 580 A.2d 163, 164 (Me. 1990) (noting that the "critical element of aggravated assault is bodily injury caused by the defendant's behavior" and that the "defendant's mental state can be intentional, knowing or reckless").[1]  Maine defined the mens rea of recklessness at the relevant time -- as it still does --

---

[1] Maine's aggravated assault statute has been amended since Bennett's convictions.  The District Court based its analysis on the version of the statute that was operative at the time of the District Court's decision, rather than on the version that was operative when Bennett was convicted.  The District Court chose to base its analysis on the amended version of the statute because the District Court concluded that the amendments to the version of the statute under which Bennett had been convicted were not material ones for purposes of the ACCA issue presented, as, among other things, none of those amendments affected the definition of "recklessly."  The parties follow suit in their briefing to us. But, as Bennett's aggravated assault convictions were based on the un-amended version of the Maine statute, we refer to that version in this opinion.  In doing so, we accept the parties' view that this older version of the statute is not different from the amended one in any respect that is material to the issues on appeal.

this way: "[a] person acts recklessly . . . when the person consciously disregards a risk." Me. Rev. Stat. Ann. tit. 17-A, § 35(3)(A); see also Model Penal Code, § 2.02(2)(c) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct."); United States v. Voisine, 778 F.3d 176, 202 (1st Cir.), aff'd, 136 S. Ct. 2272 (2016) (noting that Maine's definition of recklessness is "materially indistinguishable from the definition of recklessness in the Model Penal Code").[2]

## c.

Bennett filed several unsuccessful petitions for habeas relief in the years that followed his sentencing. Then, on April 25, 2016, more than two decades after his sentencing, Bennett sought leave to file this successive petition pursuant to 28 U.S.C. § 2255(h)(2).

Based on the Supreme Court's then-recent decision in Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"),

---

[2] Section 35 of title 17-A was enacted in 1981, over a decade prior to Bennett's conviction under 18 U.S.C. § 922(g)(1). The statute was amended in 2007 to replace the pronouns "he" and "his" with "the person." 2007 Me. Legis. Serv. ch. 173, § 8. At the time of Bennett's 1978 aggravated assault conviction, Maine's definition of recklessness tracked the Model Penal Code even more closely. See State v. Smith, 382 A.2d 40, 42 (Me. 1978) (noting that the Maine Criminal Code defined recklessness as the "conscious[] disregard [of] a substantial and unjustifiable risk" (quoting Me. Rev. Stat. Ann. tit. 17-A, § 10(3)(A))).

Bennett argued that his two Maine convictions for aggravated assault could not qualify as convictions for an offense that is a "violent felony" and thus that he did not have the three prior, qualifying convictions that ACCA requires. Bennett argued that, even if those two convictions for aggravated assault might have qualified at the time of sentencing under the residual clause of ACCA's definitional provision, Johnson II invalidated that clause on constitutional vagueness grounds. And, Bennett argued, those convictions could not qualify under the force clause, which was the only portion of the definition of "violent felony" that remained operative after Johnson II under which Bennett's past convictions for Maine aggravated assault could possibly qualify.[3]

Two days later, we granted Bennett's application for leave to file a successive habeas petition. On May 4, 2016, Bennett filed this habeas petition in the United States District Court for the District of Maine.

The petition contends that Bennett's convictions for aggravated assault were not for an offense that has as an element

---

[3] Just before Bennett filed his application for leave to file this successive petition, the Supreme Court decided Welch v. United States, 136 S. Ct. 1257, 1268 (2016), which holds that Johnson II's constitutional rule applies retroactively. The government makes no argument that, at the time of sentencing, Bennett's aggravated assault convictions could not qualify under the residual clause of ACCA's definition of a "violent felony," and thus that Bennett may not benefit from Welch's holding that Johnson II's constitutional ruling applies retroactively.

the "use . . . of physical force against the person of another," as the convictions would have had to have been in order to qualify, after Johnson II, under ACCA's definition of a "violent felony." The petition contends that, because Maine law permitted Bennett to be convicted of aggravated assault while having a mens rea of only recklessness, the offense for which he was convicted does not involve a "use" of force "against the person of another."

The petition also argues that Bennett's convictions for aggravated assault were not for a qualifying offense under ACCA for an additional reason. The petition contends that, notwithstanding Maine law's requirement that an aggravated assault cause bodily injury, Maine law permits a defendant to be convicted of aggravated assault even for "the slightest offensive touching" and thus that this offense does not have the use of "force" as an element.

In addition to arguing that Bennett does not have three prior convictions for an offense that qualifies as a "violent felony," and thus that ACCA may not be applied in sentencing him, the petition states that Bennett "ha[s] likely already served the maximum allowable term" of imprisonment. For that reason, the petition seeks to have Bennett's sentence set aside.

**D.**

The District Court bypassed the petition's contention that, because aggravated assault in Maine requires proof of only

- 10 -

"the slightest offensive touching," that offense does not have a use of "force" as an element. The District Court instead focused on Bennett's contention that these convictions were not for an offense that has as an element the "use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i) (emphases added), because Maine permitted Bennett to be convicted of aggravated assault with a mens rea of mere recklessness.[4]

In evaluating whether these convictions qualify as ones for a "violent felony," the District Court applied what is known as the "categorical approach." See Mathis v. United States, 136 S. Ct. 2243, 2248-49, 2251 (2016). That approach requires courts to determine whether an offense qualifies as a "violent felony" under ACCA by examining the elements of the offense of conviction

---

[4] The District Court treated Bennett's 1979 conviction for both aggravated assault and criminal threatening with a dangerous weapon as one for criminal threatening with a dangerous weapon, which the District Court found did qualify as a "violent felony" under ACCA. See 18 U.S.C. § 924(e)(1). Bennett does not dispute that conclusion on appeal. We therefore focus, as Bennett requests, solely on the two aggravated assault convictions.

Though not relevant to our analysis, we do note that the PSR describes Bennett's 1978 conviction by stating that the underlying indictment charged Bennett with "point[ing] and fir[ing]" a firearm at another person. The PSR similarly describes Bennett's 1979 conviction by stating that the underlying indictment charged Bennett with "plac[ing]" another person "in fear of imminent bodily injury while threatening to kill him while in possession of [a] knife, standing within a few feet of him." And, finally, the PSR described Bennett's 1986 conviction by stating that the underlying indictment charged Bennett with "stabbing" another person "with a knife in the chest, right arm and back."

- 11 -

rather than the conduct of the defendant in committing that offense.  Id.

The District Court began the inquiry under the categorical approach by examining the offense of aggravated assault in Maine as if that offense is what is known as an indivisible offense with respect to the mens rea element.  This offense is indivisible with respect to the mens rea element if the distinct, possible mens reas ("knowingly, intentionally, or recklessly") represent distinct means of committing the crime of aggravated assault rather than distinct elements of three distinct crimes of aggravated assault.  The District Court concluded that, under this elements-based approach, Maine aggravated assault, if indivisible, has as its mens rea element mere recklessness, as that is the least strict mens rea that the government would need to prove a defendant had in order to secure a conviction.  On that understanding, the District Court then concluded that Bennett's convictions for aggravated assault were not for an offense that has as an element the "use . . . of physical force against the person of another," as Bennett's convictions would have had to have been in order to qualify post-Johnson II as convictions for an offense that is a "violent felony."

The District Court also concluded that it would reach the same conclusion if aggravated assault in Maine were actually what is known as a "divisible offense."  This offense is divisible

- 12 -

with respect to its mens rea element if the possible mens reas for aggravated assault in Maine denominate not simply distinct means of committing that one crime but instead the distinct mens rea element for each of three distinct crimes.[5]  The District Court explained that Bennett's convictions for Maine aggravated assault then would still not constitute convictions that qualify as predicate offenses under the definition of a "violent felony" set forth in ACCA's force clause, because the record showed that Bennett's convictions were for the "reckless" variant.

The government then filed this timely appeal.  Our review is de novo.  Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

## II.

The key question on appeal is easier to state than it is to resolve.  Does "caus[ing] . . . bodily injury," Me. Rev. Stat. Ann. tit. 17-A, § 208, in "conscious[] disregard[ of] a risk" of doing so (i.e., recklessly), Me. Rev. Stat. Ann. tit. 17-A, § 35(3)(A) -- and thus without having the object of causing such injury (i.e., purposefully) or knowing that such injury is practically certain to result (i.e., knowingly) -- constitute "the use . . . of physical force against the person of another," 18

---

[5] The District Court stated, however, that Mathis, 136 S. Ct. 2243, likely "foreclosed" this analysis.  Given that there is no dispute here about what the record reveals about Bennett's convictions, we need not address this issue.

- 13 -

U.S.C. § 924(e)(2)(B)(i) (emphasis added)?  Only if causing bodily

injury with such a reckless mental state does constitute the use

of physical force against the person of another can Bennett's

convictions for aggravated assault qualify as convictions for a

"violent felony" under § 924(e)(2)(B)(i).  And only then may

Bennett be subject to ACCA's fifteen-year mandatory minimum prison

sentence.

We have not previously had occasion to address this

particular question regarding the scope of ACCA's definitional

provision.  Nor have we had occasion to consider even a variant of

this question under ACCA's force clause.[6]  And neither has the

Supreme Court.

---

[6] In United States v. Holloway, 630 F.3d 252, 260-62 (1st Cir.
2011), we did conclude that the then-fully-valid residual clause
of ACCA's definition of a "violent felony" did not encompass a
conviction for reckless battery under Massachusetts law.  In so
holding, we explained that "[r]eckless battery does not typically
involve purposeful conduct and thus is not similar in kind to the
offenses enumerated within § 924(e)(2)(B)(ii)."  Id. at 261.
There, we separately concluded that the defendant's conviction for
reckless battery did not come within the scope of the force clause
of ACCA's definition of a "violent felony" because the language of
the state charging instrument -- alleging that the defendant "did
assault and beat" the victim -- did not distinguish between the
harmful and the merely offensive forms of battery.  Id. at 260.
On that basis, we held that the defendant's conviction could not
qualify as a conviction for a crime that had as an element the
"use . . . of physical force" because the "government ha[d] not
established the offense of harmful battery."  Id.

In addition, we have several times held that, under
Massachusetts law, a conviction for assault with a dangerous weapon
(ADW) requires the government to prove that the defendant "acted
intentionally" and therefore that the offense qualifies as a

Nonetheless, the question does not come to us on a blank slate. In <u>United States</u> v. <u>Fish</u>, 758 F.3d 1, 9 (1st Cir. 2014), we addressed whether reckless assault and battery with a dangerous weapon (ABDW) under Massachusetts law falls within the closely analogous statutory definition of a "crime of violence" found in 8 U.S.C. § 16(b). That part of § 16 is much like ACCA's definitional provision, in that it requires that a qualifying offense "involve[] a substantial risk that <u>physical force against the person or property of another may be used</u> in the course of committing the offense." 18 U.S.C. § 16(b) (emphasis added).

---

predicate offense under § 924(e)(2)(B)(i). <u>United States</u> v. <u>Am</u>, 564 F.3d 25, 33-34 (1st Cir. 2009); <u>United States</u> v. <u>Hudson</u>, 823 F.3d 11, 17 (1st Cir. 2016) (holding that because "under Massachusetts decisional law an ADW conviction requires that the use or threat of physical force be intentional," that offense "includes a mens rea requirement sufficient to qualify the conviction as a predicate under the ACCA's force clause"); <u>see also</u> <u>United States</u> v. <u>Fields</u>, 823 F.3d 20, 34 & n.10 (1st Cir. 2016) (applying <u>Hudson</u> to the identically worded force clause found in § 4B.1(a) of the Sentencing Guidelines). Thus, we did not have occasion in those cases to resolve the question whether an offense committed with a mens rea of mere recklessness could qualify as a "violent felony" under ACCA's force clause. <u>See</u> <u>Fields</u>, 823 F.3d at 34 n.10 (noting that, "for good reason," the defendant "d[id] not contend that a conviction under the Massachusetts ADW statute fails to qualify as a conviction of a crime of violence because one may be convicted of that offense on the basis of only a mens rea of recklessness"); <u>United States</u> v. <u>Whindleton</u>, 797 F.3d 105, 116 n.12 (1st Cir. 2015) (emphasizing that the defendant "has not developed . . . any argument that Massachusetts' ADW fails to qualify as a violent felony under the ACCA because it lacks any requirement that the use or threat be intentional").

- 15 -

Moreover, in holding that ABDW did not fall within that definition, we relied on the Supreme Court's decision in Leocal v. Ashcroft, 543 U.S. 1, 9 (2004). There, the Court held that the definition of a "crime of violence" in § 16 -- both as it is set forth in subsection (b) and as it is set forth in in subsection (a), which requires that a qualifying offense have "as an element the use . . . of physical force against the person or property of another," 18 U.S.C. § 16(a) -- excluded the offense of causing serious bodily injury by driving while intoxicated, for which the mens rea element was negligence or less. Leocal, 543 U.S. at 10.

And there is still one more precedent of potential relevance. After Fish -- a decision that accorded with the reasoning of every other circuit then to have considered whether a recklessly committed offense could qualify as a "crime of violence" as defined in § 16, Fish, 758 F.3d at 10 n.4 -- the Supreme Court decided Voisine, 136 S. Ct. 2272. In that case, the Court held that a misdemeanor offense of reckless assault under Maine law does qualify under a third definitional provision -- namely, 18 U.S.C. §§ 921(a)(33)(A). That provision defines a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9), which prohibits any person who has been convicted of such a crime from possessing a firearm. See 18 U.S.C. § 922(g)(9).

This third definition, like § 16(a)'s definition of a "crime of violence," also requires an offense to have as an element

- 16 -

"the use . . . of physical force," which is the same phrase that appears as well in § 16(b)'s definition of a "crime of violence." But, the definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A) omits the follow-on "against the person of another" phrase that appears in ACCA's definition of a "violent felony" and a version of which appears in both subsections (a) and (b) of § 16's definition of a "crime of violence." See 18 U.S.C. § 921(a)(33)(A).

In the end, after carefully reviewing these various -- and, as we will explain, not always easy to reconcile -- precedents, as well as the text and purpose of ACCA, we conclude that ACCA's definition of a "violent felony" contains a "grievous ambiguity" with respect to whether that definition encompasses reckless aggravated assault in Maine, Godin, 534 F.3d at 60-61 (quoting Councilman, 418 F.3d at 83). And thus, applying the rule of lenity, we conclude that Bennett's convictions for aggravated assault do not qualify under ACCA's definitional provision as ones for a "violent felony." See id.

In so holding, as we will explain, we do not see how we could conclude, based on Voisine, that the key statutory phrase in ACCA's force clause -- "use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i) -- must be construed to include reckless offenses when a version of that same language was for so long and so uniformly construed to exclude

them.  After all, as we will explain, Voisine did not have occasion to construe the "against" phrase that appears in ACCA's force clause.  In fact, Voisine expressly reserved the issue of whether a statutory definition of a "crime of violence" that contains a similar phrase -- namely, the one that is set forth in § 16 -- must be construed to encompass reckless offenses.  136 S. Ct. at 2280 n.4.  And, finally, nothing about ACCA's purpose suggests that ACCA's definitional provision must be as encompassing with respect to crimes as § 921(a)(33)(A), notwithstanding the arguably narrower text of ACCA's definitional provision.  If anything, ACCA's purpose actually points in just the opposite direction, given the breadth of conduct that Maine criminalizes as reckless aggravated assault and the distinct types of offenses that it is clear that Congress meant to bring within ACCA's sweep.

As this synopsis of our reasoning indicates, there are quite a few steps that we must take in order to resolve the key question that we confront.  And so we have a bit of a journey ahead of us.  We begin by taking the first of these many steps, which involves our review of one of the precedents that, though not strictly controlling, is still of considerable relevance: the Supreme Court's decision in Leocal.

**A.**

Leocal held that a defendant's conviction under Florida law for the offense of causing serious bodily injury to another

- 18 -

while driving under the influence does not fall within the scope of § 16's definition of a "crime of violence." 543 U.S. at 10. Leocal based that conclusion on the fact that a defendant may be convicted of that offense absent the government having to offer "proof of any particular mental state." Id. at 7-10, 8 n.5 (noting that "[m]any states have enacted similar [driving-under-the-influence] statutes," some of which, like Florida, do not require "proof of any mental state," and others of which "appear[] to require only proof that the person acted negligently in operating the vehicle").

Leocal's analysis is relevant here for the following reason. As we have mentioned, § 16(a), the force clause for the statutory definition of a "crime of violence," requires an offense to have as an element "the use . . . of physical force against the person . . . of another" in order to qualify as a "crime of violence." 18 U.S.C. § 16(a). Likewise, in order to qualify as a "crime of violence" under § 16(b), that statutory definition's residual clause, an offense must "involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Thus, § 16's definition of a "crime of violence," like ACCA's definition of a "violent felony," contains a follow-on "against" phrase (in both of the operative clauses in § 16's definition) that modifies the prior "use . . . of physical force"

phrase.[7]  Moreover, Leocal gave significant weight to that "against" phrase in concluding that Florida's driving-under-the-influence offense was not a "crime of violence" under § 16.

Specifically, Leocal first focused on § 16's force clause, subsection (a), and, in particular, on the ordinary meaning of the word "use" that appears in that clause.  543 U.S. at 9. But, the Court explained, although that word ordinarily "requires active employment," the word "use" is also an "elastic" one that takes its meaning from "context" and from the "terms surrounding it."  Id.  For that reason, the Court concluded that the "critical

_____

[7] Specifically, § 16 provides:

> The term "crime of violence" means -- (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

8 U.S.C. § 16.  Section 16, unlike ACCA, is itself purely definitional.  It has operative effect because a number of other federal statutes rely on the definition that § 16 sets forth in providing that certain adverse consequences -- whether for purposes of sentencing or immigration -- must be imposed on an individual who has committed a "crime of violence."  Thus, in Leocal, the question before the Court arose because immigration authorities had begun removal proceedings against the petitioner, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), after he was convicted of a state driving-under-the-influence charge.  543 U.S. at 3-4. That statute makes removable any alien who has committed an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii), a term that encompasses any "crime of violence," as defined in § 16, that is punishable by a term of imprisonment of more than one year, 8 U.S.C. § 1101(a)(43)(F).

aspect of [the force clause in § 16] is that a crime of violence is one involving the 'use . . . of physical force <u>against the person or property of another</u>.'"  <u>Id.</u> (emphasis in original) (quoting 18 U.S.C. § 16(a)).

The Court then referred back to this "against" phrase that it had identified as the critical one in pointing out that, although we would naturally describe a person who pushed someone else as having "'use[d] . . . physical force against' another," we would not similarly say that a "person 'use[d] . . . physical force against' another by stumbling and falling into him." <u>Id.</u> (brackets modified).  For, the Court concluded, "[w]hile one may, in theory, actively employ <u>something</u> in an accidental manner," an ordinary English speaker would not likely "say that a person actively employs physical force <u>against another person</u> by accident."  <u>Id.</u> (second emphasis added).

On this basis, <u>Leocal</u> held that the plain meaning of § 16(a) excluded the driving-under-the-influence offense at issue. <u>Id.</u> at 10.  The offense's minimal mens rea element made it impossible to say that the offense has as an element the "use . . . of physical force against the property or person of another."  8 U.S.C. § 16(a).

The Court went on to explain that § 16(b), the definition's residual clause, contained the same "formulation" -- including the same "against" phrase -- as the force clause,

§ 16(a).  Id. at 10-11.  And thus the Court concluded that the same result should obtain under this clause, too.  Id.

The Court then added that, even if § 16 did not clearly exclude conduct committed negligently or with no mens rea at all, the Court "would be constrained to interpret any ambiguity in the statute in petitioner's favor."  Id. at 11 n.8.  The Court reasoned that, even though § 16 has "both criminal and noncriminal applications," the rule of lenity applied to both (including to the noncriminal application at issue in Leocal), given the need to "interpret the statute consistently."  Id.

Leocal explicitly left open, however, whether the "key" "use . . . of physical force against" language common to both § 16(a) and 16(b) could be satisfied by an offense that required the government to prove conduct undertaken recklessly rather than merely negligently or with no mens rea at all.  Id. at 9, 13.  And so that question remained an open one when we encountered it in Fish.

**B.**

By the time that the issue arose in our circuit approximately a decade later in Fish, ten other circuits had weighed in.  And, each of those circuits had held that the definition of a "crime of violence" under § 16 (under either that section's force clause, its residual clause, or both) did not reach the recklessly committed crimes that were at issue in the cases at

- 22 -

hand.  <u>Fish</u>, 758 F.3d at 9-10, 10 n.4 (citing cases).[8]  Moreover, many of these courts had reached that conclusion while emphasizing the significance of the same "against" phrase that <u>Leocal</u> had deemed critical.  <u>See, e.g.</u>, <u>Tran</u> v. <u>Gonzales</u>, 414 F.3d 464, 472 (3d Cir. 2005) (emphasizing that the element of "reckless[ly] endangering . . . the property of another . . . involves a substantial risk of causing injury to the property of another. But it does not involve a substantial risk of using force against the property of another" (emphases omitted)); <u>Bejarano-Urrutia</u> v. <u>Gonzales</u>, 413 F.3d 444, 446-47 (4th Cir. 2005) ("[T]he conclusion

---

[8] In addition, by that time, decisions from several of our sister circuits had held that reckless offenses did not qualify as a "violent felony" under the definition set forth in ACCA's force clause or under the identically worded provision found in § 4B1.2(a) of the Sentencing Guidelines.  <u>United States</u> v. <u>Boose</u>, 739 F.3d 1185, 1186-87 (8th Cir. 2014) ("So long as the Arkansas statute at issue encompasses reckless driving which results in serious injury, [the defendant's] conviction was not a qualifying crime of violence under the force clause of the Guidelines."); <u>United States</u> v. <u>Duran</u>, 696 F.3d 1089, 1095 (10th Cir. 2012) (construing § 4B1.2(a) of the Sentencing Guidelines and holding that because "aggravated assault under Texas law could be committed with a reckless state of mind," Tenth Circuit "case law therefore forecloses it from qualifying as a crime of violence"); <u>United States</u> v. <u>McMurray</u>, 653 F.3d 367, 374-75 (6th Cir. 2011) (interpreting <u>Leocal</u> as a requirement that the "'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct").  After our decision in <u>Fish</u>, but before the Supreme Court's decision in <u>Voisine</u>, at least one other circuit held the same with respect to ACCA.  <u>See</u> <u>United States</u> v. <u>Dixon</u>, 805 F.3d 1193, 1197 (9th Cir. 2015) (citing <u>Leocal</u>, and concluding that the "use of force" ACCA's force clause requires in order to bring a conviction within its orbit "must be intentional, not just reckless or negligent").

- 23 -

of the Leocal Court that '[i]n no "ordinary or natural" sense can it be said that a person risks having to "use" physical force against another person in the course of operating a vehicle while intoxicated and causing injury' strongly indicates that the result in Leocal would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence."  (citation omitted)); United States v. Chapa-Garza, 243 F.3d 921, 926 (5th Cir. 2001) ("The criterion that the defendant use physical force against the person or property of another is most reasonably read to refer to intentional conduct, not an accidental, unintended event.").

In Fish, we drew a similar conclusion.  We held that § 16(b)'s definition of a "crime of violence" excluded the Massachusetts offense of ABDW.  758 F.3d at 16.[9]  We pointed out that this offense has as its mens rea element only recklessness, and that Massachusetts courts had made clear that "conduct that underlies a conviction for operating under the influence and causing serious bodily injury may also be charged as ABDW."  Id.

---

[9] The defendant in Fish had been indicted under 18 U.S.C. § 931(a), "the federal body armor statute, which prohibits any person who has been convicted of a felony that is a crime of violence as defined in section 16 from possessing body armor that has been sold or offered for sale in interstate or foreign commerce."  758 F.3d at 3-4 (quoting 18 U.S.C. § 931(a)) (quotation marks, brackets, and ellipses omitted).  The government conceded that § 16(a) -- that definition's force clause -- did not apply to the defendant's conviction for ABDW.  See United States v. Tavares, 843 F.3d 1, 13 (1st Cir. 2016); Fish, 758 F.3d at 9.

- 24 -

at 9-10 (quoting United States v. Hart, 674 F.3d 33, 43 n.9 (1st Cir. 2012)).  We also noted that Leocal had stated that "[w]hile one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident."  Id. at 9 (emphasis in original) (quoting Leocal, 543 U.S. at 9-10).  And, based on that portion of Leocal, and the breadth of conduct that Massachusetts ABDW covered, we further stated that "Leocal's rationale would seem to apply equally to crimes encompassing reckless conduct wherein force is brought to bear accidentally, rather than being actively employed."  Id.  We then summarized our holding by stating, "we agree with ten Circuits that reckless conduct bereft of an intent to employ force against another falls short of the mens rea required under section 16(b) as interpreted in Leocal."  Id. at 16 (emphasis added).

### c.

From this review, ACCA's force clause would not appear to encompass reckless aggravated assault under Maine law.  ACCA's force clause contains virtually the same language as do § 16(a) and (b): "use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i).  Moreover, just as Massachusetts law makes clear that "causing serious bodily injury" to another by operating a motor vehicle under the influence qualifies as ABDW, given the offense's recklessness mens rea, see

- 25 -

Hart, 674 F.3d at 43 n.8 (citing Commonwealth v. Filoma, 943 N.E.2d 477, 482-83 (Mass. App. Ct. 2011), and Commonwealth v. Kenney, 772 N.E.2d 53, 54 n.1 (Mass. App. Ct. 2002)), so, too, Maine's highest court has held that the same conduct qualifies as an aggravated assault in that state, given that aggravated assault in Maine also permits conviction for a mens rea of recklessness, see State v. Pineo, 798 A.2d 1093, 1095 & n.2 (Me. 2002); State v. Cloutier, 628 A.2d 1047, 1048 (Me. 1993).[10]

In response, the government points out that Fish construed § 16(b), that statute's residual clause, rather than § 16(a), its force clause. The government also notes that, for

---

[10] Though Fish provides no indication that its holding was based on the specific way that Massachusetts defines recklessness, we note that Massachusetts defines recklessness as follows:

> Wanton or reckless conduct is determined based either on the defendant's specific knowledge or on what a reasonable person should have known in the circumstances. If based on the objective measure of recklessness, the defendant's actions constitute "wanton or reckless conduct . . . if an ordinary normal [woman] under the same circumstances would have realized the gravity of the danger." If based on the subjective measure, i.e., the defendant's own knowledge, "grave danger to others must have been apparent and the defendant must have chosen to run the risk rather than alter [her] conduct so as to avoid the act or omission which caused the harm."

Commonwealth v. Pugh, 969 N.E.2d 672, 685 (Mass. 2012) (quoting Commonwealth v. Welansky, 55 N.E.2d 902, 902 (Mass. 1944)) (alterations in original).

- 26 -

present purposes, we are construing ACCA's force clause, given that ACCA's residual cause is no longer operative.

But, the government's argument fails to explain how § 16's residual clause could possibly be narrower than § 16's force clause in any respect relevant to the issue in this case. After all, the residual clause in § 16 at least speaks in terms of "risk." See 18 U.S.C. § 16(b). If anything, then, the force clause in § 16 would seem to be less clearly encompassing of reckless conduct than the residual clause in § 16. We thus do not see how the fact that Fish was construing § 16's residual clause, rather than § 16's force clause, could provide a basis for us not to apply the reasoning of that case to our own.

Nevertheless, the government does identify one other reason why Fish's analysis is not applicable here. And that reason is the Supreme Court's post-Fish decision in Voisine. This argument does have potential merit. A "controlling intervening event" such as a "Supreme Court opinion on the point" can dislodge otherwise binding circuit precedent. Gonzalez-Mesias v. Mukasey, 529 F.3d 62, 65 (1st Cir. 2008). Moreover, we did recently state that Voisine "calls into question the continuing validity of Fish, as well as the similar and analogous holdings of at least ten other circuits." United States v. Tavares, 843 F.3d 1, 18 (1st Cir. 2016). Accordingly, we now consider the question before us in light of Voisine.

Voisine concerns the scope of yet a third statute, 18 U.S.C. § 921(a)(33)(A). That statute defines the term "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9).[11] And that statute then defines a "misdemeanor crime of domestic violence" as one that has as an element "the use . . . of physical force" and that is committed by a person who is in an intimate relationship with the victim. 18 U.S.C. § 921(a)(33)(A)(ii).[12]

We focus first on Voisine's textual analysis of this definition. We then consider Voisine's analysis of the purpose of

---

[11] Section 922(g)(9) provides that it is "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence to . . . possess . . . any firearm or ammunition."

[12] Specifically, § 921(a)(33)(A) provides that a "misdemeanor crime of domestic violence" is an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A). Moreover, the Supreme Court held in United States v. Hayes, 555 U.S. 415, 426 (2009), that, for purposes of § 921(a)(33)(A), the predicate crime need not have as a "denominated . . . element" that it be committed "by a person who has a specified domestic relationship with the victim." Rather, the Court held that proof of the relationship between the perpetrator and the victim is an element of § 922(g)(9) itself. Id.

the statute in which that definition appears.  After undertaking that review, we examine post-Voisine lower-court precedents, some of which have read Voisine to require that similarly worded statutes (including ACCA) be construed to encompass reckless offenses, and some of which have not.  We conclude by explaining why we agree with those courts that have held that Voisine does not require the conclusion that ACCA encompasses reckless offenses, at least when they are defined as broadly as aggravated assault is defined in Maine.

**A.**

Voisine addressed whether the definition of a "misdemeanor crime of domestic violence" encompassed the offense of assault under Maine law.  136 S. Ct. at 2276-77 (citing Me. Rev. Stat. Ann. tit. 17-A, § 207).  The defendant contended that the definition did not encompass that offense because that offense does not have as an element "the use . . . of physical force" that § 921(a)(33)(A)'s definition of a "misdemeanor crime of domestic violence" requires.  The defendant based this contention on the fact that Maine law permits the offense of assault in Maine to be committed merely recklessly, rather than knowingly or intentionally -- which is to say, that the offense may be committed merely with conscious disregard of the risk of causing bodily injury rather than with the purpose to do so or with the knowledge

that injury to another is a practically certain result.  Id. at 2278 (citing Me. Rev. Stat. Ann. tit. 17-A, § 207(1)(A)).

In rejecting the defendant's contention, Voisine focused, as a matter of text, on the ordinary meaning of the word "use" in the definition's key phrase -- "use . . . of physical force," 18 U.S.C. § 921(a)(33)(A).  Id.  Voisine reasoned that "[n]othing in the word 'use' . . . indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." Id.

The key, the Court explained, is that, although the word "use" does require that the "force involved in a qualifying assault must be volitional," that word "does not demand that the person applying force have the purpose or practical certainty that [the force] will cause harm, as compared with the understanding that it is substantially likely to do so."  Id. at 2278-79.  Thus, the Court concluded that, at least when appearing in connection with § 921(a)(33)(A)'s phrase "use . . . of physical force," the word "use" in § 921(a)(33)(A) is "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." Id. at 2279.

To make the point that a reckless assault did involve a "volitional" harm-causing action, and thus that such an offense did have as an element the "use . . . of physical force," the Court

offered two examples.  The Court explained that "[i]f a person with soapy hands loses his grip on a plate, which then shatters and cuts his wife, the person has not 'use[d]' physical force in common parlance."  Id.  But, when a person "throws a plate in anger against the wall near where his wife is standing," his "hurl counts as a 'use' of force even if the husband did not know for certain . . . but only recognized a substantial risk, that a shard from the plate would ricochet and injure his wife."  Id.

Similarly, the Court explained, "if a person lets slip a door that he is trying to hold open for his girlfriend, he has not actively employed ('used') force even though the result is to hurt her."  Id.  But, if a person "slams the door shut with his girlfriend following close behind," he, too, has "used physical force" -- "regardless of whether he thinks it absolutely sure or only quite likely that he will catch her fingers in the jamb." Id.

Voisine acknowledged that Leocal had construed a "similar" statutory definition, id. -- namely, § 16's definition of a "crime of violence," which, as we have noted, employs the phrase "use . . . of physical force against the person or property of another" in both its force and residual clauses, id. (quoting 18 U.S.C. § 16).  And, Voisine acknowledged, Leocal stated that it is "[not] natural to say that a person actively employs physical force against another person by accident."  Id. (quoting Leocal,

543 U.S. at 9) (brackets in original).  Voisine noted, too, that, in Leocal, "the Court stated, one 'would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him.'"  Id. (quoting Leocal, 543 U.S. at 9) (modifications in original).

But, Voisine explained, its conclusion that reckless assault under Maine law did have as an element "the use . . . of physical force" was "in no way inconsistent" with "Leocal's exclusion of accidental conduct" from the definition of a "crime of violence" set forth in § 16.  Id. at 2280 n.4.  The Court explained that "[c]onduct like stumbling (or, in our hypothetical, dropping a plate) is a true accident, and so too the injury arising from it; hence the difficulty of describing it as the 'active employment' of force."  Id. at 2279 (quoting Leocal, 543 U.S. at 9).  By contrast, "acts undertaken with awareness of their substantial risk of causing injury" can cause harm as "the result of a deliberate decision to endanger another -- no more an 'accident' than if the 'substantial risk' were 'practically certain.'"  Id. at 2279 (emphasis added).  Thus, the word "use" in the definition at issue in Voisine did not exclude reckless conduct even though Leocal held that that same word, at least as used in the context of § 16, did exclude negligent conduct.  Id. at 2280 n.4.

Voisine also explained that its construction of the phrase "use . . . of physical force" to "encompass[] acts of force undertaken recklessly," id. at 2282, was fully consistent with Congress's purposes in enacting § 922(g)(9), to which the definition of "misdemeanor crime of domestic violence" in § 921(a)(33)(A) applies. "Congress," the Court explained, "enacted § 922(g)(9) in 1996 to bar those domestic abusers convicted of garden-variety assault or battery misdemeanors -- just like those convicted of felonies -- from owning guns." Id. at 2280; see also Tavares, 843 F.3d at 18. The "point" of the statute was to "apply firearms restrictions to those abusers, along with all others, whom the States' ordinary misdemeanor assault laws covered." Voisine, 136 S. Ct. at 2280. Thus, Congress, in applying § 921(a)(33)(A)'s definition of the term "misdemeanor crime of domestic violence" to § 922(g)(9), intended to align the language of § 922(g)(9) with the state statutes under which domestic abusers are typically charged, including not only assault but also common-law battery. Id.; see also United States v. Castleman, 134 S. Ct. 1405, 1411 (2014) (noting that the phrase "'[d]omestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context").

Against this background, Voisine emphasized that reading § 921(a)(33)(A)'s definition of the phrase "misdemeanor crime of

domestic violence" to exclude crimes committed with a mens rea of recklessness "risk[ed] rendering § 922(g)(9) broadly inoperative in the 35 jurisdictions with assault laws extending to recklessness -- that is, inapplicable even to persons who commit that crime knowingly and intentionally." 136 S. Ct. at 2280. And Voisine pointed out that such a result would contravene Congress's evident intent for the definition of a "misdemeanor crime of domestic violence" to encompass "garden-variety assault or battery misdemeanors." Id.

The Court then concluded by addressing whether it was obliged to apply the rule of lenity. Id. at 2282 n.6. The Court explained that it was not so obliged because, as its review of the text and purpose revealed, "§ 921(a)(33)(A) plainly encompasses reckless assaults." Id.

**B.**

Based on Voisine, one of our sister circuits has concluded that a conviction for the offense of "drive by shooting" -- which requires proof that: "1) the defendant 'was in or had just exited a motor vehicle'; 2) the defendant 'recklessly discharged a firearm at or toward another motor vehicle or a building'; and 3) the defendant fired 'at or toward a person, or an occupied building or motor vehicle'" -- qualifies as a predicate offense under the force clause of ACCA's definition of a "violent felony." United States v. Fogg, 836 F.3d 951, 955-56 (8th Cir.

2016) (quoting Minn. Stat. § 609.66, subd. 1e(a), (b)). Fogg stated that both § 921(a)(33)(A) and ACCA's force clause "define qualifying predicate offenses as those involving the 'use . . . of physical force' against another." Id. at 956. Fogg then explained that Voisine's holding that "the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm," id. (quoting 136 S. Ct. at 2279), requires the conclusion that "[r]eckless conduct" can "constitute[] a 'use' of force under the ACCA," id.

One other circuit court, and at least one district court in our circuit, have reached similar conclusions as Fogg post-Voisine. See United States v. Mendez-Henriquez, 847 F.3d 214, 221-22 (5th Cir. 2017), cert. denied, No. 16-8850, __ S. Ct. __, 2017 WL 1495092 (May 22, 2017) (interpreting § 2L1.2 of the Sentencing Guidelines, which defines a "crime of violence" as, in part, any offense that "has as an element the use . . . of physical force against the person of another" and applying Voisine's conclusion that the "predicate conduct" must be "volitional"); United States v. Howell, 838 F.3d 489, 501 (5th Cir. 2016), cert. denied, 137 S. Ct. 1108 (2017) (interpreting § 4B1.2(a) of the Guidelines, which, as we have noted, contains a force clause that is worded identically to the force clause found in ACCA and emphasizing that the "Supreme Court's . . . decision in Voisine substantially undercuts" the Fifth Circuit's earlier holding that

- 35 -

"'use' of force encompasses only intentional conduct"); United States v. Webb, 217 F. Supp. 3d 381 (D. Mass. 2016); but cf. Baptiste v. Att'y Gen., 841 F.3d 601, 606-07, 607 n.5 (3d Cir. 2016) (declining to "examine to what extent the reasoning of Voisine applies in the § 16(b) context to broaden [the Third Circuit's] existing interpretation of [that] provision" in light of the "'differences in [the] contexts and purposes' of § 921(a)(33)(A) and § 16" that Voisine itself identified (quoting Voisine, 136 S. Ct. at 2280 n.4) (last alteration in original)); United States v. Mitchell, 653 F. App'x 639, 644 n.5 (10th Cir. 2016) (declining to revisit the Tenth Circuit's "requirement" that "[i]f the elements of an offense may be proven without intentional or purposeful conduct (e.g., an offense that may be committed with a reckless mens rea), that offense does not constitute a crime of violence" under § 4B1.2 of the Sentencing Guidelines).

In addition, in United States v. Benally, 843 F.3d 350, 354 (9th Cir. 2016), the Ninth Circuit noted that Voisine's holding that "reckless conduct" has as an element the "use . . . of force" as required by § 921(a)(33)(A) created "tension" with earlier Ninth Circuit precedent holding that "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16." (quoting Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1130 (9th Cir. 2006)). But, the Ninth Circuit then went on to hold that it did not need to resolve that

- 36 -

"tension" because the government in Benally "concede[d] that [the relevant statute], which requires a mental state of only gross negligence, prohibits conduct that cannot be a 'crime of violence,' even after Voisine." Id.

Other district courts in our circuit, however, have come down the other way. See United States v. Dancy, __ F. Supp. 3d __, 2017 WL 1227913 (D. Mass. Apr. 3, 2017); United States v. Lattanzio, __ F. Supp. 3d __, 2017 WL 519241 (D. Mass. Feb. 8, 2017); Virden v. United States, No. 90-CR-10325-LTS, 2017 WL 470891 (D. Mass. Feb. 3, 2017); Cruz v. United States, No. 09-CR-10104-RWZ, ECF No. 57 (D. Mass. Jan. 26, 2017); United States v. Sabetta, 221 F. Supp. 3d 210 (D.R.I. 2016). And so, too, have other district courts outside of our Circuit. See, e.g., United States v. Butler, __ F. Supp. 3d __, 2017 WL 2304215 (D.D.C. May 25, 2017); United States v. Brown, __ F. Supp. 3d __, 2017 WL 1383640 (D.D.C. Apr. 12, 2017); United States v. Wehunt, __ F. Supp. 3d __, 2017 WL 347544 (E.D. Tenn. Jan. 24, 2017); United States v. Johnson, __ F. Supp. 3d __, 2016 WL 7666523 (N.D. Cal. Dec. 16, 2016); United States v. Hill, __ F. Supp. 3d __, 2016 WL 7076929 (W.D. Pa. Dec. 5, 2016).[13]

---

[13] We note that the Supreme Court is presently considering a challenge to § 16(b) on constitutional vagueness grounds. See Sessions v. Dimaya, No. 15-1498 (argued Jan. 17, 2017 and restored to the calendar for reargument on June 26, 2017).

The government urges us to follow Fogg and similarly inclined courts, notwithstanding our holding in Fish. And we can see why. Voisine makes clear that a reckless assault does not involve merely the "accidental" employment of force but instead the "'use' of force," 136 S. Ct. at 2279, a conclusion that is arguably in tension with our reasoning in Fish. See Fish, 758 F.3d at 9 (describing "reckless conduct wherein force is brought to bear accidentally, rather than being actively employed"). And, as we will explain, Voisine does provide some support for the conclusion that, because the ordinary meaning of the phrase "use . . . of physical force," as found in § 921(a)(33)(A), encompasses reckless assault, so, too, must the parallel phrase in ACCA: "use . . . of physical force against the person of another."

But, Voisine did not expressly rule out the possibility of there being grounds for concluding otherwise. See id. at 2280 n.4. In fact, Voisine expressly left open the question whether § 16 "includes reckless behavior," by stating that "[c]ourts have sometimes given [the] two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states." Id. "All we say here," the Court emphasized, "is that Leocal's exclusion of accidental conduct from a definition hinging on the 'use' of force is in no way inconsistent with our inclusion of reckless conduct" within the definition of a

- 38 -

"misdemeanor crime of domestic violence" set forth in § 921(a)(33)(A). Id. And that express reservation accords with Leocal's earlier caution that, "when interpreting a statute that features as elastic a word as 'use,' we construe language in its context and in light of the terms surrounding it." 543 U.S. at 9.

Thus, to determine how Voisine bears on the question at hand, we must decide what significance, if any, to attribute to the seemingly divergent "contexts and purposes" between ACCA and § 922(g)(9). And so we now turn to that task -- which, fortunately, is the last one that we need to undertake.

**1.**

With respect to "contexts," Voisine had no occasion to consider the meaning that the "elastic" word "use," Leocal, 543 U.S. at 9, might take on in the context of a clause that includes a modifying "against" phrase, such as the one that appears in ACCA's definition of a "violent felony" or § 16's definition of a "crime of violence." 136 S. Ct. at 2278-79. But, while Voisine does not make clear that this is the kind of divergent "context" that the Court had in mind, there is a strong case for concluding that such a divergent context is a kind that matters.

Congress chose in ACCA to "denominate 'the use of force against another' as a single, undifferentiated element." United States v. Hayes, 555 U.S. 415, 421 n.4 (2009). Thus, the relevant volitional act that an offense must have as an element for ACCA

- 39 -

purposes is not just the "use . . . of physical force," as is the case under § 921(a)(33)(A), but the "use . . . of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). And, in context, the word "against" arguably does convey the need for the perpetrator to be knowingly or purposefully (and not merely recklessly) causing the victim's bodily injury in committing an aggravated assault.

Indeed, ten circuits -- plus our own, in Fish -- had deployed similar logic prior to Voisine in construing § 16's text to exclude various offenses for which a mens rea of recklessness is sufficient. And still other courts have so held in Voisine's wake in construing ACCA's similar words. Moreover, many of those courts -- including Fish itself -- emphasized the "against" phrase in so holding.

The logic of these precedents is clear enough. The injury caused to another by the volitional action in a reckless assault is, by definition, neither the perpetrator's object, nor a result known to the perpetrator to be practically certain to occur. For that reason, one might doubt whether such a volitional action -- even if it is an action that "deliberate[ly] . . . endanger[s] another," Voisine, 136 S. Ct. at 2279 -- is an action that also is naturally described as one that is taken "against" another. See, e.g., Dancy, 2017 WL 1227913, at *4 ("[T]hrowing a plate against the wall does not involve using

- 40 -

force 'against the person of another,' as would be present if the husband deliberately threw the plate at his wife."); see also Voisine, 136 S. Ct. at 2286 n.4 (Thomas, J., dissenting) ("The Door Slammer has used force against the door, which has then caused injury to his girlfriend." (emphasis added)).

We recognize that one might say in common parlance that "throw[ing] a plate . . . against the wall," Voisine, 136 S. Ct. at 2279, in conscious disregard of the risk posed to one standing nearby, is not only a "use . . . of physical force" but also a "use . . . of physical force against" the person who is clearly in harm's way. In such a scenario, there is an identifiable person endangered by the force used. It is much less clear, however, that it would be similarly natural to say that a person who chooses to drive in an intoxicated state uses force "against" the person injured in the resulting, but unintended, car crash, even if one might say that the act of driving a car is volitional and therefore that the driver "use[d] . . . physical force" by driving the car so recklessly. Cf. Voisine, 136 S. Ct. at 2287-90 (Thomas, J., dissenting) (highlighting that it is "implausible" that an ordinary English speaker would say that the "Text-Messaging Dad" -- who, "[k]nowing that he should not be texting and driving," is nevertheless distracted by sending a text to his wife, which "causes [him] to rear end the car in front of him" and thereby injures his son, a passenger -- "use[s] . . . physical force

against his son" (emphasis added and brackets modified));
Webster's New Collegiate Dictionary 62 (9th ed. 1991) (defining
"against" as "directly opposite"; "facing").

Yet aggravated assault in Maine encompasses the latter
drunk-driving example just as surely as it encompasses the former
plate-throwing example.  And, strikingly, several courts --
including our own in Fish -- that have found the "against" phrase
significant in excluding various reckless offenses from the scope
of § 16 have pointed to the fact that the underlying offense at
issue encompassed causing injury by driving under the influence.
See Fish, 758 F.3d at 9-10; Oyebanji v. Gonzales, 418 F.3d 260,
264 (3d Cir. 2005) (Alito, J.); Bejarano-Urrutia, 413 F.3d at 446.

It is hard to know whether the majority in Voisine would
describe such reckless driving as merely involving a "use . . . of
physical force" or as also involving a "use . . . of physical force
against" the injured party.  The simple fact is that Voisine had
no need to describe the offense at issue there by means of the
latter phrase in order to find the offense qualifying under the
statutory definition there at issue.  Voisine also does not itself
address the reckless driving example that the Voisine dissent
posits and that the Voisine dissent then contends cannot be
described as one that involves "using force against the [driver's]
son."  136 S. Ct. at 2290 (Thomas, J., dissenting).  But, it is at
least of some note that Voisine does not at any point actually

- 42 -

describe a reckless assault in the terms that the dissent treats Voisine as using to describe such an offense: as an offense that involves the "use . . . of physical force" against the victim.[14]

For these reasons, while Voisine does make clear that a reckless assault is not a true accident and thus involves a "use . . . of physical force," Voisine does not appear to foreclose the possibility that the follow-on "against" phrase in ACCA performs the narrowing function that Fish and a slew of other circuits had ascribed to the similarly worded "against" phrase in § 16. After all, Voisine does expressly reserve the issue. Id. at 2280 n.4. And, we note, the canon against surplusage does at

---

[14] Voisine does describe the definition of "misdemeanor crime of domestic violence" set forth in § 921(a)(33)(A) as, in general, one that "include[s] any misdemeanor committed against a domestic relation that necessarily involves the 'use . . . of physical force.'" Id. at 2276 (quoting 18 U.S.C. § 921(a)(33)(A)). But, many offenses that qualify as a "misdemeanor crime of domestic violence" are committed with a mens rea greater than recklessness. Thus, this statement does not suggest with any clarity that reckless aggravated assault itself involves a "use . . . of physical force against" another. So, too, with Voisine's summary of its conclusion, which stated: "[t]he federal ban on firearms possession applies to any person with a prior misdemeanor conviction for the 'use . . . of physical force' against a domestic relation." Id. at 2282 (quoting § 921(a)(33)(A)). Finally, Voisine describes the state offense committed by one of the petitioners, who violated Maine's general assault statute, Me. Rev. Stat. Ann. tit. 17-A, § 207, as being "against a family or household member." Id. at 2277. But, that general description of the offense does not address itself specifically to the reckless variant of ordinary assault under Maine law. Nor does that general description concern whether a reckless assault has as an element a "use . . . of physical force against another," which is the question we are charged with answering here.

least suggest that the follow-on "against" phrase in ACCA must be conveying something that the phrase "use . . . of physical force" does not.  See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 66 (1st Cir. 2011).[15]

Nevertheless, we can hardly be sure.  We have already noted that, at one point, Voisine could be read to be equating the phrases "use . . . of physical force" and "use . . . of physical force against."  See 136 S. Ct. at 2279. And we have suggested before, in construing § 921(a)(33)(A), that the phrase "use . . . of physical force" should be understood to refer,

---

[15] We are aware that the "against" phrase in ACCA could be denominating simply that a person as opposed to property must be harmed.  And, if so, that "against" phrase would be usefully clarifying that an offense must have as an element harm to a person rather than to a thing.  See Mendez-Henriquez, 847 F.3d at 222 (analyzing whether the phrase "against the person of another" as used in § 2L1.2 of the Guidelines encompasses a conviction for "maliciously and willfully discharging a firearm at an occupied motor vehicle" (citation and modifications omitted)).  But the same could not so easily be said of the "against" phrase in § 16's definition of a "crime of violence," as that phrase expressly references force used against both persons and property.  See 18 U.S.C. § 16 (referring to a "use . . . of physical force against the person or property of another").  And, as it is not clear to us that Congress intended for ACCA's follow-on "against" phrase to serve a wholly distinct narrowing function from the one that its similarly worded counterpart in § 16 performs, the canon against surplusage does at least suggest that the "against" phrase in ACCA's definition of a "violent felony" may well bear on the required mental state of a qualifying offense under ACCA and not simply on whether the harm is caused to a person rather than to property.

implicitly, to a use of force directed "against" the victim.[16]  If the phrase "use . . . of physical force" does itself impliedly refer to actively employing force "against" the victim as opposed to against the harm-causing object, then Voisine, by holding that such a phrase encompasses reckless assault, would indicate that a reckless assault (in any variant) necessarily involves a "use . . . of physical force against" the victim, no less than does a knowing or purposeful one.  And so, in that event, the inclusion of an "against" phrase in ACCA would seem simply to make manifest what the preceding "use . . . of physical force" phrase itself necessarily implied.[17]

There is also another reason that we might discount the significance of the fact that § 921(a)(33)(A) omits the "against"

---

[16] United States v. Nason, 269 F.3d 10, 16 (1st Cir. 2001) (describing the "use . . . of physical force" in § 921(a)(33)(A)'s definition of a "misdemeanor crime of domestic violence" as requiring that "power, violence, or pressure [be] directed against another person's body"); see also id. at 19 (noting that § 921(a)(33)(A) "focuses on the assailant's conduct (i.e., whether the assailant directed physical force against the victim)"); id. at 20 (noting that offensive physical contacts "emanate from the application of some quantum of physical force, that is, physical pressure exerted against a victim"); see also Johnson v. United States, 559 U.S. 133, 139 (2010) ("Johnson I") (noting that Black's Law Dictionary "defines 'physical force' as "'[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim").

[17] This conclusion would also accord with the two instances referenced earlier in which Voisine describes the offense of aggravated assault in general as being one that is against the victim.

phrase that ACCA's definition includes.  Section 921(a)(33)(A) defines a "misdemeanor crime of domestic violence" to require that a predicate conviction have as an element the "use . . . of physical force" and that the victim be in an intimate relationship with the perpetrator.  Hayes, 555 U.S. at 426.  Congress might thus have thought it unnecessary to specify that the "use . . . of physical force" that a qualifying offense must have as an element be "against" a person.

For these reasons, we are, in the end, uncertain.  After carefully reviewing Voisine's analysis of the text of § 922(a)(33)(A), we can see how Voisine could be read to indicate that the "against" phrase in ACCA just expresses what the phrase "use . . . of physical force" itself implies, and thus that the phrase "use . . . of physical force against" no more excludes reckless assaults than does the phrase "use . . . of physical force" itself.  But, we also do not believe Voisine must be so read.  For, while Voisine's review of the text of § 921(a)(33)(A) does make clear that a reckless assault involves a deliberate act to endanger another and thus qualifies as a crime that has as an element a "use . . . of physical force," Voisine does not make similarly clear that a reckless assault involves the deliberate decision to employ force "against the person of another."

**2.**

When we turn from "contexts" to "purposes," we find no more reason to be confident that the two definitions must be construed to be equally encompassing of recklessly committed assaults. In fact, as we have previously explained, § 922(g)(9) and ACCA "address significantly different threats." United States v. Booker, 644 F.3d 12, 21 (1st Cir. 2011).

Specifically, "ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons." Id. By contrast, "§ 922(g)(9) addresses an acute risk to an identifiable class of victims -- those in a relationship with a perpetrator of domestic violence." Id.; cf. Castleman, 134 S. Ct. at 1411 (noting that the phrase "'[d]omestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context"); Booker, 644 F.3d at 19 (explaining that Congress "expressly rejected § 16's definition of 'crime of violence,' adopting a definition of 'misdemeanor crime of violence' that was, according to [§ 922(g)(9)'s sponsor] 'probably broader' than the definition of 'crime of violence' in § 16." (quoting 142 Cong. Rec. S11872-01, S11877 (daily ed. Sept. 30, 1996) (statement of Sen. Lautenberg))). Indeed, we explained in Booker that, although "ACCA and § 922(g)(9) are both animated by

a protective rationale," there are nevertheless "sound reasons to decline to interpret the two statutes in tandem."  Id. at 20.

In particular, ACCA aims at offenses that "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger," rather than offenses that merely "reveal a degree of callousness toward risk."  Begay v. United States, 553 U.S. 137, 146 (2008). "Crimes," the Court stated in Begay, "committed in such a purposeful, violent, and aggressive manner are potentially more dangerous when firearms are involved.  And such crimes are characteristic of the armed career criminal, the eponym of the statute."  Id. at 145 (citations omitted) (emphasis added); United States v. Velázquez, 777 F.3d 91, 97 (1st Cir. 2015) ("[T]he driving force behind Begay was the Court's desire to limit application of the stringent penalties imposed by the ACCA . . . to those predicate felonies involving conduct that is not only dangerous but also indicative of a willingness to inflict harm on an identifiable victim."  (emphasis added)).

Against that backdrop, the Court in Begay held that the defendant's convictions under New Mexico law for driving under the influence -- a strict liability offense in that state -- were not for the kind of offense that Congress would have intended to qualify as a "violent felony."  553 U.S. at 146.  Begay therefore concluded that there was "no reason to believe that Congress

- 48 -

intended a 15-year mandatory prison term where that increased likelihood does not exist."  Id.

To be sure, Begay did not hold that recklessly committed offenses are excluded from ACCA's force clause.  Begay was construing only an offense for which the mens rea was non-existent.  What is more, Begay was only construing ACCA's then-still-fully-operative residual clause.  And the Court rested its analysis, in which purposefulness loomed so large, in significant part on the fact that the residual clause in § 924(e)(2)(B)(ii) followed the listing in that provision of a number of offenses for which knowledge or purpose is the requisite mens rea.  Id. at 144-45.  But we still think it at least unclear from Begay and other precedents relying on it, see, e.g., United States v. Holloway, 630 F.3d 252 (1st Cir. 2011) -- as well as ACCA's ultimately inconclusive legislative history -- whether Congress intended ACCA's enhanced sentencing regime to apply to an offense such as reckless aggravated assault as Maine defines it.

After all, we have noted, the reckless form of that crime in Maine encompasses causing injury by driving while intoxicated.  So defined, that crime -- serious as it is -- does not necessarily reveal a defendant to pose the kind of risk that Congress appears to have had in mind in defining a "violent felony" under ACCA.  Cf. Leocal, 543 U.S. at 11 ("In construing both parts of § 16, we

cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'").[18]

### C.

Stepping back, it may seem anomalous that an offense bearing the name "aggravated assault" could escape ACCA's reach. And it must seem especially so when the aggravated assault appears to have been carried out either at gunpoint or at knifepoint -- as was apparently the case here for the two prior Maine convictions at issue in this case. But Congress instructed us to take our cues from an offense's elements rather than from either its label or the underlying means by which that offense was carried out in a particular case. Mathis, 136 S. Ct. at 2251.

Moreover, under the categorical approach, we must consider the least serious conduct covered by an offense. See United States v. Armour, 840 F.3d 904, 908 (7th Cir. 2016); cf.

---

[18] In concluding that the defendant's conviction for driving under the influence and causing serious bodily injury was not a "crime of violence" under § 16, Leocal pointed out that a particular section of the Immigration and Naturalization Act (INA) describes "any crime of reckless driving or of driving while intoxicated" as a "serious criminal offense" but not apparently as a "crime of violence, as defined in section 16 of title 18." Leocal, 543 U.S. at 12 (quoting 8 U.S.C. § 1101(h)(2), (3)). For that reason, Leocal concluded that "[i]nterpreting § 16 to include DUI offenses . . . would leave [that section of the INA] practically devoid of significance." Id. For our purposes, this section of the INA at least suggests that Congress also does not equate crimes of driving while intoxicated (serious though they are) with what ACCA deems "violent felonies." See Oyebanji, 418 F.3d at 264.

Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). And, by defining the offense's requisite mens rea to be mere recklessness, Maine ensures that this offense covers conduct less clearly in Congress's ken when it crafted ACCA than much of the conduct that this offense covers -- namely, causing bodily injury in a drunk-driving crash with no intent to cause such injury and no certainty that injury to another would result from driving in an intoxicated state. See Pineo, 798 A.2d at 1095 & n.2; Cloutier, 628 A.2d at 1048.

We recognize that, as the District Court suggested, aggravated assault may be indivisible with respect to the mens rea element of that offense. For that reason, it may be that in some states even aggravated assaults committed intentionally or knowingly -- forms of aggravated assault that we may assume that Congress wished to cover -- would not be covered. In some states, after all, no more than proof of reckless conduct would be required to secure a conviction in the event that the offense is not divisible along the mens rea axis. But, this result, insofar as it may turn out to be required by the way that a state may define the offense of aggravated assault, also follows from the way that Congress has crafted the definition of a "violent felony." As the Court has made clear, Congress chose to focus on the elements of the offense of conviction in defining what a "violent felony" is. See Mathis, 136 S. Ct. at 2251.

In all events, the exclusion of reckless aggravated assault from the definition of a "violent felony" would not risk rendering ACCA broadly "inoperative" in the way that the exclusion of reckless assault would risk rendering broadly inoperative § 922(g)(9). See Voisine, 136 S. Ct. at 2280. And thus, for this reason, too, we cannot say that ACCA's definition of a "violent felony" must, as a practical matter, have been intended to encompass reckless assault just because Voisine held that Congress did intend for a different definition to embrace that offense.

**D.**

Voisine certainly does "call[] into question" our otherwise seemingly applicable analysis in Fish, see Tavares, 843 F.3d at 18, but we cannot say that Voisine does more than that. Voisine expressly reserves the question whether its holding applies to a statute that is "similarly worded" to ACCA. 136 S. Ct. at 2280 n.4. Prior to Voisine, circuits, including our own, consistently construed statutory language of the kind before us here narrowly. Against that background, given the differences in "contexts and purposes" between the statute construed in Voisine and ACCA, id., we are left with a "grievous ambiguity," Godin, 534 F.3d at 60-61 (quoting Councilman, 418 F.3d at 83), concerning whether Congress intended the phrase "use . . . of physical force against the person of another" in ACCA's definition of a "violent felony" to include or exclude reckless aggravated assault as Maine

- 52 -

defines it. And so, we must apply the rule of lenity. Id. (explaining that the "rule of lenity applies only if, after seizing everything from which aid can be derived, a court can make no more than a guess as to what Congress intended" (internal quotation marks, brackets, and citation omitted)); see also Leocal, 543 U.S. at 11 n.8 ("Even if § 16 lacked clarity . . . we would be constrained to interpret any ambiguity in the statute in petitioner's favor.").[19] For, in addition to the notice concerns that one might doubt are of much practical significance in a case with these facts, the rule of lenity does serve the additional and important purpose of ensuring "the proper balance between Congress, prosecutors, and courts." United States v. Bowen, 127 F.3d 9, 13 (1st Cir. 1997) (quoting United States v. Kozminski, 487 U.S. 931, 952 (1988)). We are considering here a sentencing enhancement of great consequence. We should have confidence, therefore, that we are doing Congress's will in applying this enhancement here.

---

[19] Although the defendant does not advance an argument in favor of lenity, we may affirm the District Court "on any basis available in the record." United States v. Rodríguez-Pena, 470 F.3d 431, 433 (1st Cir. 2006) (upholding the district court's ruling on grounds not raised below in the context of a defendant's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)); see also Delatorre v. United States, 847 F.3d 837, 843 n.2 (7th Cir. 2017) (affirming the district court on grounds not raised by the parties in the context of a § 2255 petition).

For these reasons, we cannot conclude that ACCA's definition of a violent felony encompasses aggravated assault in Maine, insofar as that offense has a mens rea element of mere recklessness. And, accordingly, we hold that Bennett does not have three prior convictions for a "violent felony" and that he should not have been sentenced for his conviction under § 922(g)(1) based on ACCA's mandatory fifteen-year minimum prison sentence.[20]

**IV.**

The judgment of the District Court is **affirmed**.

---

[20] In consequence of this holding, we, like the District Court, need not reach the question whether Maine's aggravated assault statute categorically requires that the defendant have employed "force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140.