# United States Court of Appeals
## For the First Circuit

No. 14-1036

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE BÁEZ-MARTÍNEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Selya and Kayatta,
Circuit Judges.

David B. Hirsch for appellant.
Max J. Pérez-Bouret, Assistant United States Attorney, with whom Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Susan Z. Jorgensen, Assistant United States Attorney, were on brief, for appellee.

May 13, 2015

**SELYA, Circuit Judge.** A jury convicted defendant-appellant Jorge Báez-Martínez of possessing a firearm as a convicted felon. Represented by new counsel on appeal, the defendant asserts that the prosecutor both offered an improper interpretation of witness testimony and invited the jury to infer guilt from the defendant's silence. Discerning no plain error, we affirm.

## I. BACKGROUND

The background facts are largely undisputed, so we merely sketch the pertinent events and proceedings. On the evening of March 29, 2012, the defendant went to El Trapiche, a bar in Guaynabo, Puerto Rico. That same evening, local police were checking the licenses of establishments (like El Trapiche) that were sites of frequent criminal activity.

At roughly 10:00 p.m., a cadre of police officers descended upon El Trapiche. Four official vehicles, including a patrol car carrying uniformed officers and an unmarked car carrying plainclothes officers parked nearby.

After the vehicles parked, the patrol car activated its emergency lights. As officers Ivy González Ortiz (González) and Luis de Serrano Reyes (Serrano) were exiting the unmarked car, they noticed the defendant — who was sitting at the outdoor bar — glance in their direction and then discard a fanny pack behind the bar. This act raised the officers' suspicions because in their

-2-

experience such fanny packs often were used to conceal firearms and drug-related contraband.

The officers approached the defendant, and Serrano jumped over the bar to retrieve the fanny pack. Inside, he found a loaded pistol with an obliterated serial number, additional ammunition, two cigarette lighters, and a card used for passing through toll booths. Serrano asked the defendant whether he had a permit for the firearm. When the defendant did not respond, he was arrested.

In due season, a federal grand jury charged the defendant with being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). Facing a fifteen-year mandatory minimum sentence, see id. § 924(e)(1), the defendant opted for trial. Inasmuch as the parties stipulated to several elements of the crime, the trial focused on whether the defendant knowingly possessed the firearm.

The government's case in chief consisted of the testimony of the two officers (González and Serrano). In the defense case, the defendant called his mother and sister, who testified that they had dinner with the defendant that evening and saw no fanny pack. Neither of them had known the defendant to wear a fanny pack or to smoke. His mother added that the vehicle the defendant regularly drove was equipped with its own freeway pass. The defendant also called an acquaintance with whom he had rendezvoused at El Trapiche. The acquaintance testified that the defendant was not wearing a fanny pack when they met.

The jury apparently credited the officers' testimony: it concluded that the government had proven beyond a reasonable doubt that the defendant knowingly possessed the firearm and found him guilty. The district court imposed the mandatory minimum sentence. This timely appeal followed.

## II. ANALYSIS

In this venue, the defendant asseverates that prosecutorial misconduct entitles him to a new trial. The challenged actions fall into two categories. First, the defendant submits that the prosecutor inappropriately corrected the court interpreter's English translation of certain testimony given by the police officers. Second, he submits that the prosecutor's closing argument made impermissible references to his decision not to testify. Because the defendant interposed no contemporaneous objection to any of the statements that he now denigrates, our review is for plain error. See United States v. Sánchez-Berríos, 424 F.3d 65, 73 (1st Cir. 2005). Under this rubric, the defendant must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

## A.  Translation Commentary.

We start with the defendant's claim that the prosecutor strayed into forbidden terrain by commenting on the court interpreter's translation of certain testimony.  Under the Jones Act, 48 U.S.C. § 864, judicial proceedings in the District of Puerto Rico must be conducted in English.  When a witness testifies in Spanish (as frequently happens), it is the interpreter's translation of that testimony that constitutes the evidence of record.  See United States v. Morales-Madera, 352 F.3d 1, 6 (1st Cir. 2003).

During direct examination, the prosecutor asked González to describe what transpired after the police arrived at El Trapiche.  As her account proceeded, the following exchange occurred:

> [GONZÁLEZ:]  After the strobe lights went on, I noticed the gentleman that was sitting by the bar who then takes a look to his right side, which then would have been the right side.
>
> [PROSECUTOR:]  Excuse me.  The translation. Basically she said he looks to the right "where we would be."

There was no objection, and direct examination continued.

The defendant now calumnizes the prosecutor for unilaterally supplying his own translation.  This attack is not without a patina of plausibility: the prosecutor's spontaneous correction of the interpreter may well have constituted error.  See

-5-

United States v. Powell, 771 F.2d 1173, 1175 (8th Cir. 1985) (deeming similar correction improper). If the prosecutor thought that the interpreter had made a mistake, a simple follow-up question was all that was needed to set the record straight. Even assuming that there was an error, however, that error was not so prejudicial as to warrant relief.

To prevail under plain error review, the defendant would have to demonstrate that the alleged error likely swayed the outcome of the trial. See United States v. Landry, 631 F.3d 597, 606 (1st Cir. 2011). The defendant cannot make such a showing. The government introduced ample evidence concerning where the defendant was seated in relation to the officers. And shortly after the disputed exchange, González testified without objection that the defendant looked to the right and saw the strobe lights. Given this unchallenged testimony, the prosecutor's editorialization could not conceivably have influenced the verdict.

If more were needed — and we doubt that it is — the district court carefully instructed the jury, both near the beginning and near the end of the trial, that statements and objections of counsel are not evidence. Such an instruction can, in appropriate circumstances, allay the potential prejudice that may result from overzealous advocacy. See, e.g., United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011); United States v. Bey, 188 F.3d 1, 8-9 (1st Cir. 1999). In this instance, the court's

meticulous instructions were sufficient to palliate any prejudice that might otherwise have flowed from the errant correction.

In much the same vein, the defendant takes issue with an objection that the prosecutor made during cross-examination of Serrano. We set the stage:

> [DEFENSE COUNSEL:] Agent Serrano, I believe you testified here this afternoon that what you recall seeing [the defendant] do at the bar was slide this object, this fanny pack, across the bar.
>
> In the initial report that you prepared back at the time you investigated the case, you actually wrote that he threw the fanny pack over the bar; correct?
>
> [SERRANO:] No. He extended his hand, and he threw — he dropped the fanny pack behind the bar.
>
> . . . .
>
> [DEFENSE COUNSEL:] Do you recall telling Agent Torres that while you were there at the location, you noticed a male subject sitting in a bar with a black fanny pack and that you observed that subject later identified as [the defendant] throw the fanny pack to the other side of the bar?
>
> Do you recall telling Agent Torres that specific statement?
>
> [SERRANO:] I told him that he threw the fanny pack inside the bar with his right hand.
>
> [DEFENSE COUNSEL:] So you agree that . . . you told him that the person you saw threw the fanny pack?
>
> [PROSECUTOR:] Your Honor, we have an objection here. This is sort of like a translation. In Spanish tiro could be

-7-

translated dropping in English versus throwing, and in Spanish, _tiro_ could be throwing and dropping.

I think here we only have a translation thing basically saying that he _tiro_, he dropped it, or that he threw it which is what brother counsel wants to make an impeachment.

[DEFENSE COUNSEL:] Well, Your Honor, we disagree because I think that the witnesses have testified in Spanish, and they did not use the word "_tiro_." They used the word "slipped" or "dropped."

[PROSECUTOR:] I'm sorry. He just testified, and he used the word "_tiro_."

[COURT:] Did he testify whether the fanny pack was _tiro_ or dropped? He did?

[DEFENSE COUNSEL:] That's all I have, Your Honor. Thank you.

The defendant concedes that, as a general matter, a prosecutor is allowed to object to the court interpreter's translation and/or defense counsel's attempts at impeachment. He nonetheless asserts that the objection should have been made at sidebar. His rationale is that the prosecutor relied on evidence outside the record (presumably, his understanding of Spanish) to bolster Serrano's credibility and, thus, unfairly interfered with defense counsel's attempt to impeach Serrano.

This claim of error arguably fails to satisfy any aspect of the plain error test. We need not run the gamut. For present purposes, it suffices to say that while the prosecutor's objection might more appropriately have been made at sidebar, _see_ United

States v. Diaz-Castro, 752 F.3d 101, 112 (1st Cir. 2014), the defendant has identified no case holding that an otherwise appropriate objection to impeachment based on a translation issue must invariably be made in that manner. Whether and when objections should be made at sidebar rather than in open court are matters that, within broad limits, lie peculiarly within the discretion of the trial court. Cf. United States v. Cassiere, 4 F.3d 1006, 1018 (1st Cir. 1993) (discussing district court's "broad discretion to control trial proceedings"). There was no obvious abuse of that broad discretion here — and errors that are not obvious cannot be plain. See United States v. Olano, 507 U.S. 725, 734 (1993).

To cinch matters, the defendant has not shown that the prosecutor's statement had any effect on the outcome of the trial. The prosecutor merely pointed out that there were two ways to translate the word tiro. In and of itself, that was not prejudicial.[1]

At any rate, the prosecutor's remark was made in the context of a clearly identified objection. Because the court explicitly instructed the jury that objections of counsel were not to be considered as evidence, we can safely presume that the jury

---

[1] The defendant's suggestion that the prosecutor's comment somehow violated the Jones Act, 48 U.S.C. § 864, is untenable. So long as the proceedings are conducted in English (as they were here), an occasional reference to a foreign-language word or phrase by a lawyer or a witness does not offend the Jones Act.

did not factor the remark into its decision.  See United States v. Sampson, 486 F.3d 13, 39 (1st Cir. 2007) ("Jurors are normally presumed to follow the trial court's instructions.").  The defendant has offered no reason to question the force of that presumption here.

## B.  References to the Defendant's Silence.

We turn next to the plaint that the prosecutor improperly adverted in summation to the defendant's silence.  This claim of error targets two separate statements made by the prosecutor during closing arguments.

After cataloging the government's evidence, the prosecutor stated during the initial portion of his summation:

> Ladies and gentlemen, the testimonies of Agent Gonzalez and Agent Serrano stand uncontested, uncontested.

During his rebuttal argument, the prosecutor added:

> The testimony of Agent González and Agent Serrano stands uncontested.
>
> The only witnesses that have entered through that door and sat here and provided testimony that were actually there that night, that were actually present at the time of the arrest, are only Agents González and Serrano.
>
> Everybody else had no knowledge of what happened that night, nothing.

The Fifth Amendment prohibits prosecutors from commenting on a defendant's exercise of his right to remain silent.  See United States v. Robinson, 485 U.S. 25, 30 (1988); Griffin v.

-10-

California, 380 U.S. 609, 615 (1965). A prosecutor can transgress this prohibition through indirect allusions to a defendant's silence. See United States v. Taylor, 54 F.3d 967, 978 (1st Cir. 1995). References made during closing arguments are of particular concern because such arguments "represent the parties' last, best chance to marshal the evidence and persuade the jurors of its import." Id. at 977.

It is too well settled to warrant citation of authority that a prosecutor, in his closing argument, may try to convince the jury of the force (or lack of force) of the testimony of particular witnesses. There is sometimes a fine line, however, between a permissible critique of witness testimony and an impermissible comment on the defendant's silence. For that reason, we have warned that prosecutors should tread with caution in this area. See id. at 979; United States v. Sepulveda, 15 F.3d 1161, 1186 (1st Cir. 1993).

In considering whether a prosecutor has sailed too close to the wind, we first must situate his comments within the context of the surrounding proceeding. See Sepulveda, 15 F.3d at 1187; United States v. Lilly, 983 F.2d 300, 307 (1st Cir. 1992). We then ask whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Sepulveda, 15 F.3d at 1187 (internal quotation marks omitted).

In the absence of meaningful indicia of impropriety, we will not interpret ambiguous comments in their most pernicious sense. After all, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). This principle takes on added force where, as here, the complaining party has failed to interpose a timely objection. See Taylor, 54 F.3d at 979. In such circumstances, "it seems fair to give the arguer the benefit of every plausible interpretation of her words." Sepulveda, 15 F.3d at 1187.

Nothing in the record of this case indicates that the prosecutor's statements, taken in context, were deliberate references to the defendant's silence. Nor is there any reason to believe that the jury would have treated them as such. Indeed, the two most likely interpretations of the challenged comments are both innocuous.

To begin, it seems likely that the prosecutor was simply arguing that his witnesses, but none of the defense witnesses, were present at the time of the arrest. Thus, the defense witnesses were unable to contradict the officers' version of what transpired at El Trapiche.

Careful perscrutation of the record strongly supports this interpretation. During trial, the prosecutor cross-examined each defense witness who claimed to have seen the defendant on the evening of March 29 about whether he or she had been at El Trapiche when the defendant was arrested. Each witness admitted to being elsewhere. Since the trial lasted only two and one-half days, these admissions would have been fresh in the jurors' minds.

The remainder of the prosecutor's closing argument provides supporting context. During his rebuttal, the prosecutor summarized the testimony of the defense witnesses, arguing: "None of those four witnesses were present at El Trapiche. None . . . were there at the time of the incident, and none of them can tell you that the defendant did not in fact throw that fanny pack." That line of argument was followed shortly by the prosecutor's second challenged statement, which pointed out that none of the testimony offered by those witnesses directly contested the on-the-scene observations of the police officers. Viewed in the context of the record as a whole, the prosecutor's statements do not come close to plain error. See United States v. Rodriquez-Preciado, 399 F.3d 1118, 1132 (9th Cir. 2005) (explaining that comment on failure of defense to counter testimony presented does not violate Fifth Amendment); United States v. Wade, 931 F.2d 300, 305 (5th Cir. 1991) (similar).

Alternatively, the jury might have construed the challenged remarks (or, at least, the second of them) as an attempt to shore up the credibility of the government's witnesses. In his closing, defense counsel argued that the testimony of the two officers had diverged on certain details; that Serrano previously had made inconsistent statements about how the defendant discarded the fanny pack; and that the police version of the events was incredible. The prosecutor was entitled to counter those arguments, see Sepulveda, 15 F.3d at 1187, and we think that the jury may well have interpreted what he said as fair comment to that effect.

To sum up, the challenged statements were neither manifestly intended nor of a character such that "the jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." Id. (internal quotation mark omitted). Here, moreover, the district court twice instructed the jury that the government bore the burden of proof, that the defendant was presumed innocent, and that no adverse inference could be drawn from the defendant's decision not to testify. Any possibility that the jury might have put an untoward spin on the prosecutor's isolated statements was diminished by these clear instructions. See Taylor, 54 F.3d at 980.

In an effort to blunt the force of this reasoning, the defendant suggests that there were improper insinuations lurking

-14-

beneath the prosecutor's words. He says that because he was the only person (apart from the officers) who was "actually [at El Trapiche] that night," the prosecutor's comments ineluctably drew the jury's attention to his failure to testify. But even though we have recognized that references to evidence being uncontradicted may cause constitutional concern if the defendant is the only person who logically could contradict that evidence, see Bey, 188 F.3d at 9; United States v. Flannery, 451 F.2d 880, 881-82 (1st Cir. 1971), that is not the case here.

Defense counsel noted during his summation that there were fifty people in the area, and that at least six young people were sitting at a table near the defendant. In addition, the testimony established that a bartender was working in the general vicinity of where the defendant sat. Even if the defendant might have had trouble tracking down other patrons, the record discloses no reason why the bartender could not have been called as a witness.[2] The fact that the jury was aware that other potential witnesses were present takes the sting out of the prosecutor's comments and puts them outside the realm of "naked finger-pointing at the defendant." United States v. Stroman, 500 F.3d 61, 66 (1st Cir. 2007); see United States v. Ayewoh, 627 F.3d 914, 925 (1st

_____

[2] Indeed, during his opening statement, defense counsel told the jury that it would hear testimony from the bartender to the effect "that he never saw [the defendant] throw a fanny pack, and . . . never heard a fanny pack land on the floor of the bar." The record is silent as to why the defense reneged on this commitment.

Cir. 2010); United States v. Glantz, 810 F.2d 316, 323 (1st Cir. 1987).

## C.  A Parting Shot.

In a last-ditch effort to save the day, the defendant contends that even if none of the prosecutor's actions warrants a new trial when viewed in isolation, their combined effect tips the scales.  This contention invokes the cumulative error doctrine, which holds that the aggregate impact of errors may sometimes necessitate setting aside a verdict even though each individual error is harmless.  See Sepulveda, 15 F.3d at 1195-96.

In this case, the doctrine adds very little to the defendant's overall attack.  It is the aggregate effect of errors — not the aggregate effect of non-errors — that counts.  See Williams v. Drake, 146 F.3d 44, 49 (1st Cir. 1998).  Viewed against this backdrop, aggregating the effect of the defendant's claims of error leads nowhere.  Even considered as a group, the prosecutor's challenged actions do not "synergistically achieve the critical mass necessary to cast a shadow upon the integrity of the verdict." Id. (internal quotation marks omitted).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment is

**Affirmed.**

-16-