# United States Court of Appeals
## For the First Circuit

No. 18-1289

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE HIRAM BÁEZ-MARTÍNEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Franco L. Pérez-Redondo, Research & Writing Specialist, with whom Eric A. Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

February 11, 2020

**KAYATTA**, **Circuit Judge**.   Jorge Hiram Báez-Martínez challenges his Armed Career Criminal Act ("ACCA") sentence on the ground that he lacked the three required predicate felonies.  The district court determined that Báez-Martínez's prior conviction for second-degree murder and two prior convictions for attempted murder were violent felonies, thus triggering the ACCA's fifteen-year mandatory minimum.  We affirm.

## I.

In 2012, Báez-Martínez was convicted at a jury trial for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The unobjected-to Presentence Investigation Report ("PSR") included the following prior offenses, all in violation of Puerto Rico law:  (1) one conviction for second-degree murder; (2) two convictions for attempted murder; and (3) two convictions for carjacking,[1] each committed on the same occasion as the two attempted murders.[2]  The PSR stated that the ACCA, 18 U.S.C. § 924(e)(1), applied, meaning that Báez-Martínez was subject to a statutory minimum of fifteen years' imprisonment.  The district

---

[1]  The carjacking convictions were under the since-repealed Article 173B.  See P.R. Laws Ann. tit. 33, § 4279b (originally enacted Aug. 5, 1993, amended Apr. 4, 1998, repealed June 18, 2004); see also United States v. Carrera González, Cr. No. 05-366, 2006 WL 2092569, at *3 n.1 (D.P.R. July 26, 2006).

[2]  The PSR included several other prior convictions, including for robbery and kidnapping, but the government is not contending here that any of these offenses should be considered violent felonies under the ACCA.

court agreed and sentenced Báez-Martínez to fifteen years. We affirmed his conviction. See United States v. Báez-Martínez, 786 F.3d 121, 130 (1st Cir. 2015).

In 2015, the Supreme Court declared the residual clause of the ACCA's definition of "violent felony" unconstitutional. See Johnson v. United States ("Johnson II"), 135 S. Ct. 2551, 2563 (2015). In light of this holding, the Supreme Court vacated Báez-Martínez's sentence and remanded to determine whether the ACCA still applied. See Báez-Martínez v. United States, 136 S. Ct. 545 (2015) (mem.). On remand, the district court held that attempted murder and second-degree murder are violent felonies under the force clause, thus satisfying the ACCA's three-predicate-felony requirement. See United States v. Báez-Martínez, 258 F. Supp. 3d 228, 239–40 (D.P.R. 2017). The court did not address carjacking. The court again sentenced Báez-Martínez to fifteen years, remarking, "[I w]ish that I wouldn't have to sentence you to 180 months, but that is the minimum."[3]

Báez-Martínez timely appealed. We review de novo his preserved claim that his prior convictions do not constitute

---

[3] The apparent basis for the district court's statement seems to be the testimony about Báez-Martínez's concerted efforts at rehabilitation during the period of his incarceration as well as his impressive achievement of having successfully pursued his Johnson II case, pro se, up to the Supreme Court.

violent felonies under the ACCA.  See United States v. Kennedy, 881 F.3d 14, 19 (1st Cir. 2018).

## II.

The ACCA mandates a minimum sentence of fifteen years for qualifying defendants who violate § 922(g).  18 U.S.C. § 924(e)(1).  A qualifying defendant is anyone who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  Id.  Báez-Martínez has no prior drug-related convictions, so we consider only potential violent felonies. "[V]iolent felony" is defined under the ACCA as:

> any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another; or . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Id. § 924(e)(2)(B).

Báez-Martínez does not dispute that second-degree murder, attempted murder, and carjacking are "punishable by imprisonment for a term exceeding one year."  So we train our attention on the rest of the definition, which divides into three parts:  the "force clause" (sometimes called the "elements clause"), the "enumerated clause," and the "residual clause." Stokeling v. United States, 139 S. Ct. 544, 556 (2019).  The

- 4 -

residual clause is defunct after Johnson II, 135 S. Ct. at 2563. And since none of Báez-Martínez's prior convictions fall within the list of enumerated offenses, that leaves only the force clause. So, we ask if the crimes at issue "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another."

In answering this question, we apply the "categorical approach," which we have explained in detail many times before. See, e.g., United States v. Faust, 853 F.3d 39, 50 (1st Cir. 2017). In brief, we must presume that the defendant's prior offense was for the least culpable conduct for which there is a "realistic probability" of a conviction under the statute. United States v. Starks, 861 F.3d 306, 315 (1st Cir. 2017) (citing Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)); see Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). And in ascertaining the requirements of state law, we are "bound by [the state] Supreme Court's interpretation of state law, including its determination of the elements of" the criminal statute. Johnson v. United States ("Johnson I"), 559 U.S. 133, 138 (2010).[4]

With this approach in mind, we turn to considering the Puerto Rico offenses of second-degree murder and attempted murder.

---

[4] For these purposes, we treat Puerto Rico law as state law. See González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009) ("In regard to law-determination, Puerto Rico is the functional equivalent of a state.").

For the reasons that follow, we find that each offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."  Báez-Martínez's conviction for second-degree murder and his two convictions for attempted murder under Puerto Rico law therefore satisfy the ACCA's three-predicate-felony rule.  We save for another day whether carjacking also categorically counts as a violent felony.

## A.   Second-Degree Murder

Báez-Martínez argues on appeal that second-degree murder under Puerto Rico law does not categorically satisfy the mens rea requirement of the force clause because, he contends, second-degree murder can be committed with a mens rea of "recklessness." As we will explain, our case law supports the contention that one who acts only recklessly does not "use . . . physical force against the person of another" within the meaning of the ACCA's force clause.  But, as we will also explain, Puerto Rico law -- like the law of most jurisdictions -- requires proof of a heightened degree of recklessness to convict a person of second-degree murder.  And as we will finally explain, that heightened form of recklessness is sufficient for purposes of the force clause even though ordinary recklessness is not.  We offer these explanations in reverse order.

## 1.

The incorporation of a mens rea component into the "violent felony" definition traces back to the Supreme Court's

- 6 -

decision in Leocal v. Ashcroft, 543 U.S. 1 (2004). There, the Court interpreted the word "use" in the force clause of 18 U.S.C. § 16(a), defining "crime of violence" in nearly identical terms as the ACCA defines "violent felony," to require "a higher degree of intent than negligent or merely accidental conduct." Id. at 9. The Court reserved the question whether "reckless" conduct could suffice. Id. at 13.

The mens rea analysis made the jump to the ACCA in Begay v. United States, 553 U.S. 137 (2008). There, the Supreme Court held that drunk-driving statutes, which generally punish reckless conduct or possibly have no mens rea requirement at all, fall outside the scope of the ACCA's residual clause. Id. at 144-45; see also Sykes v. United States, 564 U.S. 1, 13 (2011). In a series of cases thereafter, we -- like many circuit courts -- drew an increasingly hard line against treating statutes encompassing reckless conduct as violent felonies. See United States v. Holloway, 630 F.3d 252, 261 (1st Cir. 2011); see also United States v. Fish, 758 F.3d 1, 9-10 (1st Cir. 2014) (interpreting 18 U.S.C. § 16(b)). Despite this approach having been marked as not yet finally resolved by the Supreme Court, see Voisine v. United States, 136 S. Ct. 2272, 2279 (2016) ("[N]othing in Leocal . . . suggests . . . that 'use' marks a dividing line between reckless and knowing conduct."), we have since reaffirmed this bright-line rule in evaluating crimes under the force clause, see United States

- 7 -

v. Rose, 896 F.3d 104, 109–10 (1st Cir. 2018) (citing Bennett v. United States, 868 F.3d 1 (1st Cir.), opinion withdrawn as moot, 870 F.3d 34, 36 (1st Cir. 2017) (per curiam), reasoning adopted by United States v. Windley, 864 F.3d 36, 37 n.2 (1st Cir. 2017) (per curiam)); Kennedy, 881 F.3d at 19–20.[5]

But murder (including second-degree murder) requires more than ordinary recklessness.  The mens rea required for murder at common law was and remains "malice aforethought."  2 Wayne R. LaFave, Substantive Criminal Law § 14.1 (3d ed. 2017).  Malice aforethought comes in four flavors:  (1) intent to kill, (2) intent to cause serious bodily injury, (3) depraved heart (also referred to as "reckless indifference" or "extreme recklessness"), and (4) intent to commit a felony (the felony-murder rule).  Id.; see United States v. Pineda-Doval, 614 F.3d 1019, 1038–40 (9th Cir.

---

[5] The Supreme Court recently granted, then dismissed, certiorari to settle the question of whether a crime encompassing ordinary recklessness can satisfy the ACCA's force clause.  See Walker v. United States, 769 F. App'x 195 (6th Cir. 2019), cert. granted, 2019 WL 6042320 (U.S. Nov. 15, 2019) (No. 19-373), and cert. dismissed, 2020 WL 411668 (U.S. Jan. 27, 2020) (dismissing due to petitioner's death).  But see Solicitor General's Response to Suggestion of Death, id. (Jan. 23, 2020) (recommending that the Court take up the issue in another case).  Whatever the ultimate resolution of that issue in the Supreme Court, our decision here will not necessarily be changed.  Assuming the Court upholds our holding in Bennett and Windley concerning ordinary recklessness, our analysis here would likely remain unchanged unless the Supreme Court should opine in a manner broad enough to eliminate all forms of recklessness as sufficient.  If the Court instead holds that reckless crimes can be violent felonies, then a fortiori crimes requiring heightened recklessness can, too.

- 8 -

2010); see also Samuel H. Pillsbury, Crimes of Indifference, 49 Rutgers L. Rev. 105, 116–21, 118 n.28 (1996). It is the third category that concerns us in this case.

Whatever the label, this "depraved heart" type of mental state is consistently distinguished from ordinary recklessness. See generally John C. Duffy, Note, Reality Check: How Practical Circumstances Affect the Interpretation of Depraved Indifference Murder, 57 Duke L.J. 425 (2007); Alan C. Michaels, Note, Defining Unintended Murder, 85 Colum. L. Rev. 786 (1985). For example, the Model Penal Code defines the term "recklessly" in its ordinary sense as follows:

> A person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Model Penal Code § 2.02(2)(c). But for homicide to constitute murder, the defendant must act "recklessly under circumstances manifesting extreme indifference to the value of human life." Id. § 210.2(1)(b). A criminal homicide that satisfies the former, ordinary standard of recklessness but not the latter, heightened standard is classified as "manslaughter." Id. § 210.3(1)(a).

Thus, if a defendant "shoot[s] a gun into a room that [he] knows to be occupied" and one of the occupants is killed,

the defendant could be found guilty of murder because he acted not only recklessly, but with reckless indifference to human life. United States v. Begay, 934 F.3d 1033, 1041 (9th Cir. 2019) (quoting Pineda-Doval, 614 F.3d at 1039). If, on the other hand, a defendant recklessly shoots a gun in the woods while hunting and kills another person, the defendant has merely committed manslaughter because the probability that death would result was much lower. See State v. Perfetto, 424 A.2d 1095, 1098 (Me. 1981). Similarly, "the vast majority of vehicular homicides," including "the average drunk driving homicide," are treated only as manslaughter, United States v. Fleming, 739 F.2d 945, 948 (4th Cir. 1984), but when a defendant with a blood alcohol content of .315% drives nearly 100 miles per hour in the oncoming lane of a busy thoroughfare and kills another driver in a collision, a murder conviction can result, see id. at 947-48.

Of course, this distinction between ordinary recklessness and "extreme" recklessness only matters to the extent it undercuts the rationale for reckless conduct not qualifying under the force clause of the ACCA. That rationale trains on the statutory phrase "use . . . of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In Voisine, the Supreme Court held that reckless conduct could entail a "use" of force under 18 U.S.C. § 921(33)(A)(ii) (defining "misdemeanor crime of domestic violence"). 136 S. Ct. at 2278-79. But § 921(33)(A)(ii)

requires only the "use . . . of physical force," not the "use . . . of physical force against the person of another."  In holding that reckless conduct did not qualify under the ACCA, we relied on those additional five words, reasoning that the phrase "against the person of another" in the ACCA force clause materially distinguishes Voisine.  See Bennett, 868 F.3d at 19.  "The injury caused to another by the volitional action in a reckless assault," we reasoned, was not "a result known to the perpetrator to be practically certain to occur."  Id. at 18.  So "reckless conduct bereft of an intent to employ force against another falls short of the mens rea required under" the ACCA.  Id. at 12 (emphasis in original) (quoting Fish, 758 F.3d at 16).  Thus, for purposes of the ACCA, the dividing line is somewhere between recklessness and the more culpable mental state of "knowledge," at least under our precedent.  Id. at 2–3; cf. Voisine, 136 S. Ct. at 2279 (remarking on the "dividing line between reckless and knowing conduct").  But we recognized it was a close call, and we ultimately resorted to the rule of lenity to determine that recklessness was not enough. See Bennett, 868 F.3d at 3.

Malice-aforethought-style recklessness falls somewhere between ordinary recklessness and knowledge on the mens rea spectrum.  See Duffy, supra, at 429.  Per the Model Penal Code commentary, "recklessness that can fairly be assimilated to purpose or knowledge should be treated as murder, [whereas] less

- 11 -

extreme recklessness should be punished as manslaughter." Model Penal Code § 210.2(1)(b) cmt. 4 (Am. Law Inst. 1980). So this heightened recklessness is at least as close to knowledge as it is to ordinary recklessness. See United States v. Marrero, 743 F.3d 389, 401 (3d Cir. 2014) (observing that depraved-heart recklessness "is tantamount to an actual desire to injure or kill" (quoting Commonwealth v. Kling, 731 A.2d 145, 148 (Pa. Super. Ct. 1999))); cf. Tison v. Arizona, 481 U.S. 137, 157 (1987) ("[R]eckless disregard for human life . . . represents a highly culpable mental state . . . ."). And since we found it a close call that ordinary recklessness did not satisfy the Leocal standard after Voisine, we find less difficulty in saying that heightened recklessness approaching knowledge does satisfy that standard.

This makes sense when we consider the rationale behind these cases, too. In Bennett, the fact that reckless conduct was not "practically certain" to result in injury, and that an identifiable victim might not be ascertained during the conduct, meant that there was no active employment of force "'against' another" in the ordinary sense. 868 F.3d at 18; see Leocal, 543 U.S. at 9 ("'[U]se' requires active employment."). But what separates malice aforethought is the "extreme indifference to the value of human life." Model Penal Code § 210.2(1)(b). So the defendant who shoots a gun into a crowded room has acted with malice aforethought precisely because there is a much higher

- 12 -

probability -- a practical certainty -- that injury to another will result. And the defendant certainly must be aware that there are potential victims before he can act with indifference toward them. See United States v. Dixon, 419 F.2d 288, 292-93 (D.C. Cir. 1969) (Leventhal, J., concurring) ("The difference between that recklessness which displays depravity and such extreme and wanton disregard for human life as to constitute 'malice' and that recklessness that amounts only to manslaughter lies in the quality of awareness of the risk."). So the defendant who acts in this manner can more fairly be said to have actively employed force (i.e., "use[d]" force) "against the person of another."

In holding that second-degree murder qualifies as a violent felony under the ACCA even though the offense requires no showing of mens rea beyond malice-aforethought-variety recklessness, we make two additional points. First, in interpreting any statute, we must not lose sight of the common sense that likely informed Congress's understanding of the ACCA's terms. See United States v. Turkette, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided . . . ."); United States v. D'Amario, 412 F.3d 253, 255 (1st Cir. 2005) (recognizing that we apply "common sense" in interpreting criminal statutes).[6] Second,

_____

[6] Indeed, Congress seems to have assumed (sensibly) that courts would treat murder as a "crime of violence," at least before Johnson II was decided. See, e.g., 18 U.S.C. § 3559(f)(1)

- 13 -

"in terms of moral depravity," murder is often said to stand alone among all other crimes. Kennedy v. Louisiana, 554 U.S. 407, 438 (2008) (quoting Coker v. Georgia, 433 U.S. 584, 598 (1977) (plurality opinion)). We therefore decline to follow the majority in the Ninth Circuit's decision in Begay, 934 F.3d at 1038-41 (holding that federal second-degree murder is not a crime of violence for purposes of § 924(c)), and align instead with the Fourth Circuit's decision in In re Irby, 858 F.3d 231, 237 (4th Cir. 2017) (holding that federal second-degree murder is a crime of violence, although not considering the precise argument made here).

**2.**

Báez-Martínez was convicted of second-degree murder under Puerto Rico law, not under some generic common-law murder formula. So our preceding analysis only matters if Puerto Rico murder -- and Puerto Rico second-degree murder in particular -- fits the general model we have laid out.

Murder in Puerto Rico, like in most states, is defined as the "killing of a human being with malice aforethought." Pueblo v. Lucret Quiñones, 11 P.R. Offic. Trans. 904, 927, 929 (1981). Second-degree murder is any murder that is not first-degree murder, where first-degree murder includes any "willful, deliberate, and

---

(increasing the mandatory minimum for federal crimes of violence against children "if the crime of violence is murder").

- 14 -

premeditated killing," plus a few other methods.  Id.  The Supreme Court of Puerto Rico has stated that "[t]he concept of malice aforethought implies the absence of just cause or excuse in causing death and implies, also, the existence of the intent to kill a fellow human being."  Pueblo v. Rivera Alicea, 125 P.R. Dec. 37, 1989 WL 608548 (1989) (English translation) (emphasis in original).  For second-degree murder, though, "malice aforethought is enough, without the specific intent to kill."  Pueblo v. Rosario, 160 P.R. Dec. 592, 609-10 (2003) (certified translation). Malice aforethought "denotes a state or condition in the actor formed by an inherent deficiency in his or her sense of morality and righteousness as a result of having stopped caring about the respect and safety of human life."  Id. at 609.  In other words, Puerto Rico recognizes "depraved heart" murder and, like many states, classifies this as second-degree murder in most cases.

That would be the end of the matter, but for one wrinkle that remains to be ironed out.  Báez-Martínez was convicted of second-degree murder in 1996.[7] At that time, the Puerto Rico Penal Code defined two general mental states:  "intent" and "negligence."[8]  P.R. Laws Ann. tit. 33, §§ 3061-3063 (repealed

_____

[7]  The murder itself was committed in 1995.
[8]  In 2014, Puerto Rico updated its penal code to reflect the four Model Penal Code mental states of "purposely," "knowingly," "recklessly," and "negligently."  See United States v. Voisine, 778 F.3d 176, 203 n.13 (1st Cir.) (Torruella, J., dissenting),

June 18, 2004); see Pueblo v. Castañón Pérez, 14 P.R. Offic. Trans. 688, 693 (1983) (plurality opinion). "Intent" included crimes in which "the result, though unwanted, has been foreseen or could have been foreseen by the person as a natural or probable consequence of his act or omission," P.R. Laws Ann. tit. 33, § 3062, which sounds a lot like the Model Penal Code definition of ordinary "recklessness." And because Puerto Rico law in 1996 defined "malice" to include the commission of an "intentional act," id. § 3022(19), "malice" at least arguably incorporated the definition of "intent," recklessness included. Thus, Báez-Martínez argues, "malice aforethought" in Puerto Rico included ordinary recklessness at the time of his conviction.

There are a few problems with Báez-Martínez's reasoning. For starters, it equates "malice" with "malice aforethought," even though the latter is a term of art specific to the crime of murder. See Wilbur v. Mullaney, 496 F.2d 1303, 1306 (1st Cir. 1974); 2 LaFave, supra, § 14.1; Dannye Holley, Culpability Evaluations in the State Supreme Courts from 1977 to 1999: A "Model" Assessment, 34 Akron L. Rev. 401, 410 n.93 (2001). The only case Báez-Martínez cites discussing the definition of "malice" is Castañón Pérez, which involved the use of that term in the crime of mayhem, not murder. 14 P.R. Offic. Trans. at 692. Also, the plurality in

_____

cert. granted in part, 136 S. Ct. 386 (2015), and aff'd, 136 S. Ct. 2272 (2016).

- 16 -

Castañón Pérez stated that mere reckless conduct would fall under the statutory definition of "negligence," not "intent." See id. at 693 ("The new provision introduces the classification of the offense as either intentional or willful; and negligent or culpable, equivalent to reckless negligence."); see also Pueblo v. Rivera-Rivera, 23 P.R. Offic. Trans. 641 (1989) ("Puerto Rican [criminal] negligence, with its modalities of recklessness, carelessness, want of skill, inattention, nonobservance of the law or regulations, is equivalent to civil-law [g]uilt." (emphasis added)). Finally, many states have been inconsistent with mens rea terminology, including "recklessness," see Voisine, 136 S. Ct. at 2281, so Puerto Rico is not unique in this regard. This inconsistency does not change the fact that "malice aforethought" is a peculiar kind of recklessness. And since Puerto Rico law in 1996 required proof of malice aforethought for all Puerto Rico murder convictions, see Lucret Quiñones, 11 P.R. Offic. Trans. at 927, 929, we must reject Báez-Martínez's argument that his 1996 conviction for second-degree murder under Puerto Rico law does not count as a violent felony.

As a final salvo, Báez-Martínez asks that we apply the rule of lenity to determine that Puerto Rico murder could have encompassed ordinary recklessness in 1996. We invoke the rule of lenity only if there is some "grievous ambiguity or uncertainty" about how the law should be applied, Muscarello v. United States,

524 U.S. 125, 139 (1998) (quoting <u>Staples</u> v. <u>United States</u>, 511 U.S. 600, 619 n.17 (1994)), and we find no such ambiguity in Puerto Rico law requiring malice aforethought.

Moreover, we question whether the rule of lenity could help Báez-Martínez in trying to broaden the reach of the offense of conviction. Our task at this stage of the categorical approach is to discern the elements of state criminal law. <u>See, e.g.</u>, <u>Stokeling</u>, 139 S. Ct. at 554-55 (deciphering Florida's robbery statute). If that law were so ambiguous as to warrant application of lenity, lenity might favor the narrower rather than the broader reading of the state law. <u>See</u> <u>United States</u> v. <u>Santos</u>, 553 U.S. 507, 514 (2008) (plurality opinion) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."). Here, for example, if it were entirely uncertain whether a person could be convicted of second-degree murder in Puerto Rico only on a showing of ordinary recklessness, lenity would ordinarily favor a negative answer. The rule of lenity is a tool of statutory interpretation, <u>see</u> <u>Rule of Lenity</u>, <u>Black's Law Dictionary</u> (11th ed. 2019) ("The judicial doctrine holding that a court, in construing an ambiguous criminal statute that sets out multiple or inconsistent punishments, should resolve the ambiguity in favor of the more lenient punishment."), so lenity would arguably favor an ACCA defendant only when the uncertainty resides in the ACCA itself, <u>see, e.g.</u>, <u>Bennett</u>, 868

- 18 -

F.3d at 3; see also Leocal, 543 U.S. at 11 n.8 (uncertainty in § 16). In any event, since we find no grievous ambiguity in the Puerto Rico law at issue, lenity can play no role here, no matter what its role might otherwise be.

## B. Attempted Murder

Báez-Martínez has two prior convictions for attempted murder. The question whether Congress intended attempted murder to be a violent felony has an easy answer: of course it did. And the ACCA as enacted contained a residual clause that easily encompassed attempted murder. See James v. United States, 550 U.S. 192, 208 (2007) (using attempted murder as an obvious example of a crime that fell within the residual clause), overruled by Johnson II, 135 S. Ct. at 2563. The residual clause, however, suffered from being too vague at its margins, and in Johnson II, the Supreme Court struck the clause as void for vagueness. 135 S. Ct. at 2563. Now courts try to see if crimes that were likely well encompassed by that clause might find refuge in the force clause. So the precise issue before us is not that easy-to-answer question (Did Congress intend to include attempted murder as a violent felony under the ACCA?), but the more difficult, workaround question (Does attempted murder qualify under the force clause?).

The Supreme Court first spelled out the standard for "physical force" in Johnson I, 559 U.S. 133. "[P]hysical force," the Court tells us, means "violent force" or "a substantial degree

- 19 -

of force" that is "capable of causing physical pain or injury to another person." Id. at 140 (emphasis in original). "[M]ere[ ]touching" as an element of a crime is insufficient. See id. at 141. The force must be "exerted by and through concrete bodies." Id. at 138. "Intellectual force or emotional force" does not count. Id.

We apply this standard to attempted murder under Puerto Rico law. As noted, murder is "the killing of a human being with malice aforethought." Lucret Quiñones, 11 P.R. Offic. Trans. at 929. Attempted murder requires a specific intent to kill. Pueblo v. Bonilla Ortiz, 23 P.R. Offic. Trans. 393 (1989). "[A]ttempted murder occurs when a person commits acts or incurs omissions unequivocally directed to cause the death of a human being with malice aforethought." Id.[9] This is true of attempted murder (and murder) in most states, so Puerto Rico attempted murder fits the general common-law model in this regard. See 2 LaFave, supra, § 14.3 ("[M]urder may be committed by an omission to act, in violation of a duty to act, when accompanied by an intent to kill . . . ."). See generally Model Penal Code § 2.01 (describing circumstances under which an omission can form a basis for criminal liability).

_____

[9] The government has not argued that attempted murder is "divisible" along these grounds (i.e., omission versus act), so we stick with the basic "categorical approach" and not the familiar "modified categorical approach." See Rose, 896 F.3d at 107.

Báez-Martínez's argument builds on the fact that murder, and thus attempted murder, can be committed "when a person . . . incurs omissions unequivocally directed to cause the death of a human being with malice aforethought."  He argues that an omission (i.e., doing nothing) cannot be considered "violent force" "exerted by and through concrete bodies" under Johnson I. Therefore there is no "physical force" and thus the force clause does not apply.  On a blank slate, we might well agree.  When a child dies from not being fed, the death is not -- in nonlegal terms -- a result of "force."  Nor is it the result of "forceful physical properties as a matter of organic chemistry" as where a defendant "sprinkles poison in a victim's drink."  United States v. Castleman, 572 U.S. 157, 171 (2014) (internal quotation marks omitted).  The human body is a highly organized organic system that requires input (energy in the form of food) to sustain itself. Without that input, the body naturally tends toward a state of disorder and eventually death as a result of entropy.  See generally Enrico Fermi, Thermodynamics (1936).  "Force" has nothing to do with it.

For this reason, several courts -- including our own -- have at least suggested that crimes that can be completed by omission fall outside the scope of the force clause. See United States v. Teague, 469 F.3d 205, 208 (1st Cir. 2006) (Texas child endangerment); see also United States v. Mayo, 901 F.3d 218, 230

- 21 -

(3d Cir. 2018) (Pennsylvania aggravated assault); United States v. Resendiz-Moreno, 705 F.3d 203, 205 (5th Cir. 2013) (Georgia first-degree child neglect), overruled by United States v. Reyes-Contreras, 910 F.3d 169, 187 (5th Cir. 2018); cf. Chambers v. United States, 555 U.S. 122, 127–28 (2009) (holding that a "failure to report" crime is not a violent felony because "the crime amounts to a form of inaction"); United States v. Middleton, 883 F.3d 485, 489–90 (4th Cir. 2018) (holding that South Carolina involuntary manslaughter is not a violent felony because it can be committed by providing alcohol to minors). But see United States v. Jennings, 860 F.3d 450, 459–60 (7th Cir. 2017) ("[W]hy should it matter that the mechanism of harm is negative ( . . . withholding an EpiPen® in the midst of a severe allergic reaction) or positive (swinging a fist or administering a poison)?"). In short, common sense and the laws of physics support Báez-Martínez's position.

But while nature follows the laws of physics, circuit courts must follow the law as announced by the Supreme Court. See, e.g., Parker v. Matthews, 567 U.S. 37, 48–49 (2012) (per curiam). And in Castleman, the Supreme Court declared: "[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force. . . . [A] 'bodily injury' must result from 'physical force.'" 572 U.S. at 169–70; see also id. at 175 (Scalia, J., concurring in part and concurring in the judgment)

("'[I]ntentionally or knowingly caus[ing] bodily injury,' categorically involves the use of 'force capable of causing pain or injury to another person' . . . ." (second alteration in original) (citation omitted) (quoting id. and Johnson I, 559 U.S. at 140)).

Castleman involved the "misdemeanor crime of domestic violence" standard under § 921(a)(33)(A). The Court decided for those purposes that "offensive touching" would be sufficient for "physical force" even though it would not satisfy Johnson I's "violent force" standard for the ACCA. Id. at 162–63 (majority opinion). But see id. at 175 (Scalia, J., concurring in part and concurring in the judgment) (believing the standards should be the same). The Court thus reserved whether bodily injury, such as a cut, would necessarily entail that higher level of "violent" force. Id. at 167 (majority opinion) ("Whether or not the causation of bodily injury necessarily entails violent force [is] a question we do not reach."). We, too, have since avoided answering that question. See Lassend v. United States, 898 F.3d 115, 126–27 (1st Cir. 2018); Whyte v. Lynch, 815 F.3d 92, 92–93 (1st Cir. 2016) (per curiam). And we need not answer it in full today, because this case does not involve a minor injury such as a cut or a bruise.

But if all bodily injuries necessarily entail some force, as Castleman declares, then it seems to us that a serious

- 23 -

bodily injury must necessarily entail violent force under Castleman's reasoning of "injury, ergo force."  "Violent" force, after all, is simply physical force distinguished by the degree of harm sought to be caused.  See Violence, Black's Law Dictionary, supra ("The use of physical force . . . esp., physical force unlawfully exercised with the intent to harm."); Violence, Merriam-Webster's Collegiate Dictionary (11th ed. 2012) ("[E]xertion of physical force so as to injure or abuse . . . ."); see also Offense, Black's Law Dictionary, supra (defining "violent offense" as a "crime characterized by extreme physical force, such as murder"); cf. Johnson I, 559 U.S. at 140-41 (citing various dictionary definitions of the word "violent").  And since murder always results in death (and death is the ultimate injury), the violent-force requirement is satisfied.

Attempted murder, of course, is separated from murder in that the victim does not die.  We do not think this makes a difference.  The force clause covers both the "use" and "attempted use" of force.  So, if murder requires violent force because death results, then attempted murder does, too, because the defendant attempted to reach that result.  Cf. United States v. García-Ortiz, 904 F.3d 102, 107-08 (1st Cir. 2018) ("[P]lacing someone in fear of bodily injury . . . involve[s] the use of physical force, if 'force' encapsulates the concept of causing or threatening to cause bodily injury.").

We have considered whether we might nevertheless stay within our circuit lane and still accept Báez-Martínez's argument by distinguishing Castleman. The Supreme Court did not expressly consider the problem of omissions -- like starving a child -- when it decided Castleman. It instead considered harm that "occurs indirectly" like in the poison example. Castleman, 572 U.S. at 171; see also United States v. Edwards, 857 F.3d 420, 427 (1st Cir. 2017). But its categorical pronouncement that "[i]t is impossible to cause bodily injury without applying force in the common-law sense" plainly encompasses any bodily injury, deeming the injury to be the fingerprint of force. 572 U.S. at 170. And when the Supreme Court is plain on a point, even in dicta, we are generally expected to follow its lead. See LaPierre v. City of Lawrence, 819 F.3d 558, 563-64 (1st Cir. 2016) ("[W]e 'are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings.'" (quoting Cuevas v. United States, 778 F.3d 267, 272-73 (1st Cir. 2015))).

We also note that two other circuits have recently marched to the Castleman drum on this issue, holding that attempted murder is a crime of violence under analogous definitions. See United States v. Peeples, 879 F.3d 282, 286-87 (8th Cir.) (holding that attempted murder is a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)), cert. denied, 138 S. Ct. 2640 (2018); see also United States v. Studhorse, 883 F.3d 1198, 1204-06 (9th Cir.)

(holding that attempted murder is a crime of violence under the force clause of § 16(a), although not considering the murder-by-omission argument), cert. denied, 139 S. Ct. 127 (2018). We are bound to agree. Therefore, Báez-Martínez's two convictions for attempted murder must also be counted as violent felonies.

**III.**

One final issue remains. Báez-Martínez argued in the district court, by way of a pro se filing, that the government waived ACCA sentencing by failing to designate which of his prior convictions constituted predicate felonies under the ACCA at his initial sentencing. On appeal, Báez-Martínez renews this argument, again in a pro se supplemental brief filed after his opening brief, claiming that due process prohibits the government from redesignating predicate convictions after his successful appeal to the Supreme Court.

In support of his argument, Báez-Martínez observes that other courts have held that defendants have a due process right to be notified that a prior conviction is being used as an ACCA predicate. See United States v. Moore, 208 F.3d 411, 414 (2d Cir. 2000); United States v. O'Neal, 180 F.3d 115, 125–26 (4th Cir. 1999). Those same cases, however, hold that this notice requirement is satisfied so long as the PSR lists the conviction. See Moore, 208 F.3d at 414; O'Neal, 180 F.3d at 125–26; see also United States v. Tracy, 36 F.3d 187, 198 (1st Cir. 1994) (holding

- 26 -

that predicate felonies need not be listed in an indictment). Here, Báez-Martínez's PSR listed all the relied-upon convictions, so these cases do not help him much.

Báez-Martínez next observes that other courts have held that, in instances where a PSR specifically designates some prior convictions as ACCA predicates but not others, the government is precluded from substituting those other offenses on remand after a defendant's successful appeal. See United States v. Hodge, 902 F.3d 420, 430 (4th Cir. 2018); cf. Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1259 (11th Cir. 2013), overruled on other grounds by McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076 (11th Cir. 2017). Again, these cases are inapposite. The rule in these cases is based on the doctrine of expressio unius est exclusio alterius; the defendant's "notice" as to the unlisted convictions drops out from the listing of other convictions. See Hodge, 902 F.3d at 427-28 (citing NLRB v. Sw. Gen., Inc., 137 S. Ct. 929, 940 (2017)); cf. United States v. Wallace, 573 F.3d 82, 88 (1st Cir. 2009) (discussing the "mandate rule"). Here, the PSR did not designate any particular prior conviction as an ACCA predicate; all convictions listed in the PSR were treated the same. As such, expressio unius does not apply because Báez-Martínez was on equal notice as to each of his convictions that they might be considered a predicate felony.

Báez-Martínez asks us to do what no other court has done: hold that the government must specifically and exhaustively designate all ACCA predicates from the outset, or else forfeit ACCA sentencing. We decline the invitation. Báez-Martínez was on notice that the prior convictions listed in his PSR might be considered for ACCA sentencing, and the government has maintained at all stages of this litigation that, at a minimum, his convictions for second-degree murder, attempted murder, and carjacking were for violent felonies.[10]

**IV.**

For the foregoing reasons, we <u>affirm</u> Baéz-Martínez's ACCA sentence.

---

[10] Báez-Martínez also argues that, by not addressing his argument at all in its responsive brief on appeal, the government has waived this point and that vacatur of his sentence is therefore required. We disagree. As a general matter, appellees are not held to the same waiver standards as appellants. <u>See</u> <u>Ms. S. v. Reg'l School Unit 72</u>, 916 F.3d 41, 48-49 (1st Cir. 2019). Given the unusual briefing posture of this issue and the relative weakness of Báez-Martínez's argument, we are unwilling to reverse the district court in this instance merely because the government failed to proffer the obvious point to be made in defense of the judgment.